FRATERNAL ORDER OF POLICE, CAPTAIN JOHN C. POST LODGE
No. 44 ET AL., APPELLANTS-CROSS APPELLEES, v. CITY OF
DAYTON ET AL., APPELLEES-CROSS APPELLANTS.

[Cite as F. O. P. v. Dayton (1973), 35 Ohio App. 2d 196.]

(No. 4150—Decided May 15, 1973.)

*Messrs. Skilken & Kidd* and *Mr. Ralph A. Skilken, Jr.,* of counsel, for appellants-cross appellees.

*Mr. James W. Drake,* city attorney, *Mr. H. Donald Hawkins* and *Mr. Thomas P. Randolph,* for appellees-cross appellants.

CRAWFORD, P. J. Plaintiffs are the Fraternal Order of Police, city firefighters and four individuals listed on the most recent promotional eligibility list in the police and fire departments of the city of Dayton. The defendants are

the city of Dayton, its city manager, civil service board and city commission.

The original complaint alleges as a first cause of action that the various promotional eligibility lists have expired or are about to expire, or that the defendant civil service board has acted to terminate them, and that at present there are no such lists in either the police or fire departments.

The prayer is to require a reinstatement of these promotional eligibility lists, or that defendants give the reason they were terminated, and re-establish promotional eligibility lists and afford those previously on the lists an opportunity for retesting.

The second cause of action alleges that defendant city manager has halted all normal promotional procedures and replaced them with a scheme to place untested and unqualified personnel in both entry level and command positions in the police and fire departments, affecting the rights of plaintiffs as employees, and reducing the effective protection of the community.

The prayer is for an order directing the abandonment of such scheme.

Subsequently, and before defendants had answered, plaintiffs filed a supplemental complaint alleging that the defendants have undertaken and announced a plan to create five additional sergeant positions in the police department, and such plan limits applicants to the black race only. It is also alleged that defendants intend to promote two of these five black sergeants to lieutenant after six months, and one of these lieutenants to captain within a year.

The prayer of the amended complaint is (1) for an injunction against carrying out this "announced discriminatory plan" or any plan limiting promotions to any race, and (2) for an order that defendants comply with the rules and regulations of the civil service board by admitting all those eligible to the promotional examinations.

Defendants answered, admitting generally the plan objected to, but denying that the plaintiffs will thereby suffer injury.

Defendants also deny having acted to terminate eligibility lists. The evidence sustains this latter denial, indicating, rather, that the lists have or are about to expire, and that they are simply not being renewed according to prior custom.

The court of common pleas denied the prayers of the original complaint regarding the eligibility lists, but granted the first prayer of the supplemental complaint to the extent of permanently enjoining defendants from proceeding with the proposed plan.

Plaintiffs appealed from the denial of the relief prayed for in their original complaint. Defendants cross-appealed from the granting of the relief prayed for in the supplemental complaint.

Section 97 of the charter of the city of Dayton provides that the chief examiner of the civil service board "shall provide examinations in accordance with the regulations of the board and maintain lists of eligibles of each class of the service of those meeting the requirements of said regulations." The defendants, by permitting the promotional lists to expire, have failed to comply with this requirement, and thus allowed reserve manpower to disappear, permitting a potential threat to the safety of the community. This situation is unprecedented in the history of the city. Their excuse is financial austerity. Nevertheless, they now propose, somehow, to create five new sergeancies. The purpose is transparent. It paves the way for the plan of replacement which constitutes the real issue in this case.

If it were in our power to order the creation or restoration of such promotional eligibility lists, we should promptly do so for the safety and welfare of the community.

However, we lack that authority, and the plaintiffs have not shown a right to that remedy in this action. Their prayer for such remedy is stated in the alternative and defendants have promised to perform the alternative by preparing new promotional lists, although their method of doing so is challenged.

The original complaint was filed July 18, 1972. The defendants contend that the court erred in not dismissing

the supplemental complaint filed on August 7, 1972, for plaintiffs' failure to comply with Civil Rule 15(E), by first filing a motion for leave to file the supplemental complaint. Plaintiffs say they did make such a motion orally, and assert that the plan challenged by the supplemental complaint was announced subsequent to the filing of the original complaint, and probably in response thereto. Therefore, it is so related to the original complaint as to come within the interpretation of the rule contained in *Columbus, ex rel. Willits,* v. *Cremean* (1971), 27 Ohio App. 2d 137, 158.

Plaintiffs say that defendants did not raise this question in the trial court. Defendants claim without a written motion they had no opportunity to do so. However, in their answer they did attack the supplemental complaint, but only on the basis that it was not signed as provided in Civil Rule 11. Dismissal is not mandatory under that rule for such a formal and technical reason.

This brings us to the real merits of the controversy. Plaintiffs concede that the comparatively small number of black members of the police department (21 out of 395), and the almost complete absence of blacks in the command structure (with the single exception of one specially qualified black major), require correction. The issue is simply the method to be followed.

In restricting the applicants to blacks in the promotional tests for sergeant, the city clearly and directly violates its own charter. Section 105 provides:

"No person in the classified service or seeking admission thereto, shall be appointed, reduced or removed, or in any way favored or discriminated against because of political opinions or affiliations, or because of race, color or religious belief."

Likewise, the restriction does violence to the basic doctrine of civil rights. The city says that the present situation in the police department is the result of race discrimination in the past, however unintentional it may have been. They refer of course, to discrimination against the black race. Their proposed method of correction is by discrimination in favor of blacks, and against others

No doubt all will agree in the abstract that any dis-

crimination in the classified service because of race, color or religious or political faith or conviction is not only legally, but also morally, wrong, and wholly indefensible. But the cure for discrimination is not more discrimination. Such a course would but compound and aggravate the existing evil. The precious, hard-won victory over race discrimination must not be lightly bartered away for illusory temporary advantage.

It is not within the scope of this decision to devise the details of a correct solution. That is a task for other branches of government.

However, we may properly comment upon certain aspects of the evidence which may help to point a way. The city manager and the chief of police gave persuasive testimony to the importance of cooperation and understanding in every neighborhood and segment of the community, and the need for black citizens to feel that they are understood and have fair participation in the law enforcement agencies of their government.

These witnesses testified that a concerted effort in 1962 to interest blacks in joining the police department was a successful beginning to promote a better balance and that in the most recent promotional examination for sergeant, four of seven black patrolmen who applied were successful, although it was their first examination, and very few applicants of any race succeed on their first attempt.

Suffice it to say that the present unfortunate situation is amenable to correction within the law. The proposed plan challenged here does violence to the law and perpetuates the basic evil of race discrimination.

The judgment granted below will be affirmed.

*Judgment affirmed.*

KERNS and SHERER, JJ., concur.