THE STATE, EX REL. FRATERNAL ORDER OF POLICE, CAPTAIN
JOHN C. POST LODGE NO. 44, ET AL., APPELLEES, *v.* CITY OF
DAYTON, APPELLANT, ET AL.

[Cite as State, ex rel. Fraternal Order of Police, v. Dayton
(1977), 49 Ohio St. 2d 219.]

(No. 76-956—Decided March 16, 1977.)

*Messrs. Gianuglou & Brannon, Mr. Dwight D. Brannon* and *Mr. Gerald H. Wilks,* for appellee Fraternal Order of Police.

*Mr. Paul M. Hunter* and *Mr. Michael L. Monta,* for appellee Dayton Black Police Association.

*Messrs. Smith & Schnacke, Mr. Edward B. Mitchell* and *Mr. James W. Drake,* city attorney, for appellant.

WILLIAM B. BROWN, J. The history of the dispute in this cause dates back at least to 1972, when the civil service board of the city of Dayton attempted to establish new eligibility lists for promotion in the police department as part of an affirmative action program to encourage minority members to enter the police force. Differences over this policy produced a tangle of litigation in both state and federal courts,[1] with the result that, according to the parties, there have been no promotions within the classified service of the police department to supervisory positions since 1972. The present litigation largely concerns an examination for promotion to sergeant held on December 14, 1975. The Court of Appeals held that the procedures involved in that test violated the city charter and also intentionally violated the injunction issued by that court in *Spencer v. Dayton, supra* (44 Ohio App. 2d 236). The court thereupon prohibited the city from using the eligibility list compiled on the basis of that procedure and ordered the

---

[1] In *Dayton* v. *Fraternal Order of Police* (Civil No. C-3-75-143, December 1975) the United States District Court for the Southern District of Ohio, Western Division, listed related cases, including *F. O. P.* v. *Dayton* (1973), 35 Ohio App. 2d 196; *Spencer* v. *Dayton* (1975), 44 Ohio App. 2d 236; *N. A. A. C. P.* v. *Dayton,* No. 4420 (S. D. Ohio 1975); *Warner* v. *Dayton* (C. P. 1974); *Smith* v. *Dayton* (C. P. 1975); *Hensley* v. *Shepard,* No. 4917 (Montgomery Co. Ct. App. 1975); *Malcolm* v. *Smith,* No. 4916 (Montgomery Co. Ct. App. 1975); *Finley* v. *Parent,* No. 127958 (C. P. 1972); *F. O. P.* v. *Dayton et al.,* No. 75-150 (S. D. Ohio 1975).

city to draw up a new eligibility list based upon the December 14th examination but following scoring procedures agreed to by the parties after the decision of the court was announced. Other aspects of the court's decision and judgment entry are discussed below. The city of Dayton sets out eight propositions of law assigning error in the court's decision.

## I.

The Court of Appeals held the city in contempt on the grounds that, by intentionally violating its charter, the city had also violated the injunction in *Spencer*. (In its entry, the *Spencer* court had specifically enjoined "promotional examinations for the former positions of lieutenant and related plans *that violate the charter or rules of the civil service board.*" [Emphasis added.]) The Court of Appeals also held that the city charter and the rules required that the factors of seniority and efficiency not be ignored or nullified, though it was possible to vary the degree of credit for those factors.[a]

The procedure which the city sought to follow in the December 14, 1975, promotional examination was a special two-step test. Credits for seniority and efficiency which could total up to five percentage points were to be added to the raw score attained by each officer taking a job-related test. Everyone who scored 70 points or better, including those credits earned for seniority and efficiency, became eligible for a second, psychological test. The certified list

---

[a]Section 96 of the charter provides:

"The board, subject to the approval of the commission, shall adopt, amend, and enforce a code of rules and regulations, providing for appointment and employment in all positions in the classified service, based on merit, efficiency, character, and industry, which shall have the force and effect of law; shall make investigations concerning the enforcement and effect of this chapter and of the rules adopted. It shall make an annual report to the commission."

Section 98 of the charter provides:

"The board shall provide for promotion to all positions in the classified service, based on records of merit, efficiency, character, conduct and seniority."

was to be made up solely from the results of the psychological test, and the credits for seniority and efficiency were reflected in that list only to the extent that those credits might permit a police officer to pass the first test and therefore become eligible to take the second one.

The city defends this two-stage test as necessary in order to comply with federal EEOC guidelines. Whatever the force of this contention, it is clear the city never modified its own rules or charter to permit the proposed promotional scheme.[3] It is not necessary to reach the question of whether this scheme was valid under federal guidelines or whether it might be valid under the Dayton Charter if properly adopted by rule. The scheme violated the rules governing promotions which the civil service board is by charter required to adopt and enforce. It was, accordingly, also a violation of the injunction in *Spencer, supra,* and it was not error for the court below to find the city in contempt. The city's first proposition of law is overruled.

## II.

The city also contends that the injunction is so broadly and vaguely stated, and so fails to particularize the acts to be mandated or prohibited, that it cannot support a finding of contempt.

Civ. R. 65(D) provides that "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to

---

[3]Section 9, Rule 17 of the rules of the civil service board provides:

"Credit for seniority and for efficiency and experience in any promotional examination shall be determined as follows:

"(a) One-fourth of one percentage point shall be credited for each full year of service. Not more than two and one-half points shall be credited for seniority towards a final grade.

"(b) The credit given for efficiency shall be two and one-half percent (2½%) of the average of the applicant's last two efficiency ratings for the rating periods immediately preceding the date of the examination. If an employee has served in the city service less than one year and only one efficiency rating has been required, the credit given shall be two and one-half percent (2½%) of such single rating."

the complaint or other document, the act or acts sought to be restrained * * *." This rule is identical to the federal rule; although we have not had occasion to consider this question, there are federal cases interpreting the rule. The essential holding of these cases is that the decree sought to be enforced must not be too vague to be understood.[4]

In the present cause, the opinion and entry of the *Spencer* court gave the city adequate notice that the charter provisions and rules cited by the court were to be followed in subsequent promotional examinations. By construing the relevant sections of the charter, the court made legal interpretation of the charter clear. Furthermore, the entry appears to be as specific as reasonably possible, given the fact that the city retained the right to amend the charter or its rules. Taken together, the opinion and entry are specific and detailed enough to give the city adequate notice of the requirements imposed on it and are not too vague to be understood. The city's second proposition of law is rejected.

---

[4]In *International Longshoremen's Assn.* v. *Philadelphia Marine Trade Assn.* (1967), 389 U. S. 64, the court overturned a lower court ruling finding a labor union in contempt for failing to obey a decree which the court described as leaving "entirely unclear what it demanded." The court concluded, at page 76, that "[t]he judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid. Because the decree of this District Court was not so framed, it cannot stand. And with it must fall the District Court's decision holding the union in contempt. We do not deal here with a violation of a court order by one who fully understands its meaning but chooses to ignore its mandate. We deal instead with acts alleged to violate a decree that can only be described as unintelligible. The most fundamental postulates of our legal order forbid the imposition of a penalty for disobeying a command that defies comprehension."

In *Schmidt* v. *Lessard* (1974), 414 U. S. 473, the court vacated a judgment order telling the defendants only "not to enforce 'the present Wisconsin scheme' against those in the appellee's class."

## III.

The city's third proposition of law is, basically, that the two-stage examination procedure does not violate the city charter. The Court of Appeals examined this issue at some length and concluded that "the complete elimination from final scores of all job-related questions is both an abuse of discretion and a violation of law." It also permanently prohibited the civil service board from using threshold tests to determine eligibility to take promotional exams.

In our view, it is unnecessary to reach the question of whether the promotional procedure constitutes an abuse of discretion and a violation of law. Since the Dayton promotional scheme violates the city's *rules*, it is invalid regardless of whether it might also have so totally eliminated considerations of efficiency and seniority that it also violates the charter. The city's third proposition of law is thereby mooted by our decision upon the other aspects of this cause, and we express no opinion thereon.

We do feel compelled, however, to rule on the breadth of the court's order. Paragraph No. 6 of the entry states:

"The civil service board is permanently prohibited from using threshold tests to determine eligibility to take a promotional examination, from refusing to add the mandated credit for merit and seniority to the scores on the eligibility list and from eliminating the scores of job knowledge tests for placement upon the eligibility list."

By its terms, the court's order would significantly limit the discretion of the city in adopting new rules for promotional examinations. Such an order is unnecessarily broad under the facts of this cause, since future threshold tests might be valid under the charter and properly enacted by rule, and yet nevertheless be barred by the court's order. Paragraph No. 6 of the court's judgment entry, is accordingly, reversed.

No error is assigned concerning the court's orders directing the preparation of a new eligibility list based upon the December 14 examination, and that part of the court's judgment is accordingly affirmed.

## IV.

The fourth proposition of law states:

"Under the charter of the city of Dayton, there is no requirement that, in order to be eligible for promotion within the classified service, a candidate must have served in the position or classification immediately below that to which promotion is sought."

That proposition is correct as stated, but it fails to address the real issue raised by the Dayton practice of allowing police officers to bypass the rank of sergeant and "jump rank" from officer to lieutenant.

Section 1 of Rule 17 of the Rules and Regulations of the Civil Service Board of Dayton provides that no promotion to a higher position shall be made until after the person promoted has occupied the next lower position for at least six months. Section 3 of Rule 6 states that an applicant for the position of lieutenant must have from one to three years experience as a police officer; but it does not require that an applicant have served first as a sergeant. (It does require, however, that sergeants serve first as police officers and that captains serve first as lieutenants.) Rule 6 also states that "[t]he procedures set forth in Rule 17 shall be followed insofar as they are not inconsistent with Rule 6."

There is no inconsistency between the requirement of Rule 17 that a person must serve for at least six months in the next lower position before being promoted to any position and the provision of Rule 6 which is silent as to whether a candidate for lieutenant must first have served as a sergeant. Therefore, we find that Rule 17 applies, and that a candidate for lieutenant must first serve at least six months in the next lower rank of sergeant. We need not and do not reach the question of whether "jumping rank" would be valid under the charter if permitted by rule, and we also find no error in the entry of the Court of Appeals on this point.

## V.

In its fifth and sixth propositions of law, the city contends, in effect, that the Court of Appeals erred in holding

invalid the ''rule-of-three'' promotional procedure and the provisions of Section 3 of Rule 12 providing for appeal from a "rule-of-three" promotion decision.[5]

[5]Section 3, Rule 12, provides:

"A request from a supervisor to the board for certification of appointment to, or employment in, any position in the competitive class shall specify the title, duties and compensation for such position, so certification·may be made from the proper eligible register, or, when necessary, a proper eligibile register may be prepared as the result of a competitive examination held for that purpose. The board shall thereupon, as soon as practical, certify for appointment from the appropriate eligible register, the names of the three highest ranking eligible persons on such eligible register. The position shall, with the·approval of the appointing authority, be filled by one of the persons so certified. Written reasons shall be provided to the board if higher ranking eligibles are not selected.

"(a) Whenever the sex of those whose names are to be certified is fixed by law, rule or regulation, or is determined to be a bona fide occupational qualification, only the names of those of the sex so fixed or determined shall be certified, but in all other cases, certification shall be made without regard to sex.

"(b) Any person being the highest ranking person on an eligible register, and having been considered and not selected for appointment to a promotional vacancy three times during the existence of an eligible register may be removed from such eligible register upon written recommendation, together with the reasons that such person is not acceptable for appointment, from the supervisor to the appointing authority and with the approval of the board. A copy of such recommendation and statement of reasons for removal shall be given personally to the person recommended to be removed. Any person who is so recommended to be removed may appeal such action in writing to the board within 10 days after receipt of a copy of such recommendation, giving reasons why he/she should not be removed from the eligible register. The board, upon review of such reasons, shall determine whether there is sufficient cause for removal, and may approve or disapprove the same. If the board disapproves removal, such person shall be restored to the eligible register in his/her former position. The decision of the board shall be final.

"(c) Persons eligible for original appointment or appointment from an eligible register established as a result of an open competitive examination shall be considered for appointment without limit to the number of times considered. Such person may be removed from the eligible register upon written recommendation, together with the reasons that such person is not acceptable for appointment, from the supervisor to the appointing authority and·with the approval of the

The "rule of three" requires that the board list the top three highest-ranking persons eligible for a position and permits the appointing authority to approve one of the three to fill the position. A city with a home-rule charter may adopt a "rule of three" as an exercise of a power of local self-government, notwithstanding that the rule conflicts with a state statute. *State, ex rel. Canada, v Phillips* (1958), 168 Ohio St. 191. The Dayton Charter does not provide for such a rule, and the Court of Appeals held that the adoption of the "rule of three" in Rule 12, Section 3, violates Section 97 of the charter which provides that the chief examiner shall be the employment officer and shall fill positions in the classified service from the eligibility lists.[8] The court reasoned that, pursuant to the charter, only the chief examiner may fill positions in the classified service and that the transfer of this responsibility to others by rule would be an unlawful delegation of authority. This reasoning is correct. Since the charter provides that the chief examiner shall fill positions in the classified service, a rule may not reduce that authority to the designation of three candidates, nor expand the authority of some other official by permitting him to make the final appointment from among those candidates.

The city contends further that the court misconstrued the authority of the city manager under Section 48 of the charter to appoint and remove employees in the civil ser-

board. If the board disapproves removal, such person shall be restored to the eligible list in his/her former position. The decision of the board is final."

[8]Section 97 of the Dayton city charter provides:

"The chief examiner shall be the employment officer of all city employes coming under the classified service. He shall provide examinations in accordance with regulations of the board and maintain lists of eligibles of each class of the service of those meeting the requirements of said regulations. Positions in the classified service shall be filled by him from such eligible lists upon requisition from and after consultation with the city manager. As positions are filled the employment officer shall certify the fact, by proper and prescribed form, to the city treasurer and the director of the department in which the vacancy exists."

vice', and that Section 48 provides a sufficient basis for the enactment of the "rule of three." Both Sections 48 and 97 of the charter seem to grant authority to appoint employees in the civil service.

The Court of Appeals concluded that, under Sections 48 and 97, the chief examiner makes the actual appointment from the list of those eligible, and the city manager does not have authority over the chief examiner. The court stated, as follows: "Construing the charter provisions together it is apparent that direction and consultation is imperative before the chief examiner knows when, if and how many vacancies are to be filled and the time when it is to be done. The requirement for requisition and consultation with the city manager cannot be stretched to include authority over the prescribed duties of the civil service board or over the conduct of the civil service board or over the conduct of the chief examiner in filling vacancies."

We find the Court of Appeals' reading of the two sections to be more reasonable than the city's assertion that the role of the chief examiner is limited to "filling vacancies" with appointees chosen by the city manager. We hold, therefore, that Rule 48 does not provide a sufficient basis for the enactment of the "rule of three" and Section 3, Rule 12, is invalid because it violates the city charter. Since the "rule of three" is itself invalid, the issue of whether the provisions for appeal from the effects of its operation are also invalid is moot.

## VI.

Although the city was prevented from promoting police

---

[7]Section 48 of the charter provides:

"Powers and duties of the city manager. The powers and duties of the city manager shall be:

"* * *

"(b) To appoint and, except as herein provided, remove all directors of the departments and all subordinate officers and employes in the departments in both the classified and unclassified service; all appointments to be upon merit and fitness alone, and in the classified service all appointments and removals to be subject to the civil service provisions of this charter."

officers as a result of the ongoing litigation, it had a practice of making emergency, temporary appointments and promotions, under which the ''plus-rated'' employees were paid the salary and assigned the duties of their temporary ranks. The Court of Appeals held this practice invalid insofar as it increased the salaries of the plus-rated employees. Section 103 of the charter provides:

''The treasurer or other public disbursing officer shall not pay any salary or compensation for service to any person holding a position in the classified service unless the pay roll or account for such salary or compensation shall bear the certificate of the board, by its secretary, that the persons named therein have been appointed or employed and are performing service in accordance with the provisions of this charter and of the rules established thereunder.''

The city argues necessity and emergency as a reason for the indefinite temporary salary increases. However, the increases plainly violate Section 103 and are not payable under the provision of the charter permitting increased salaries under specified emergency situations.[8] The city's seventh proposition of law is accordingly overruled.

## VII.

The city's eighth and last proposition of law is that attorney fees may not be taxed as part of costs in contempt proceedings in Ohio.

It is a well-established general rule in Ohio and elsewhere that ''in the absence of a statutory provision making attorney fees a part of the costs, such fees can not be so taxed.'' *State, ex rel. Michaels,* v. *Morse* (1956), 165 Ohio St. 599, 607; *State, ex rel. Grosser,* v. *Boy* (1976), 46 Ohio St. 2d 184; *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177. However, it has been held almost universally in other

---

[8]Section 70 of the charter, in part, provides:

"In case of riot, emergency, at time of elections or similar occasions, the Director of Public Safety may appoint additional patrolmen and officers for temporary service who need not be in the classified service."

jurisdictions, as an exception to this rule, that a trial court has discretion to include reasonable attorney fees as a part of costs taxable to a defendant found guilty of civil contempt. *Toledo Scale Co.* v. *Computing Scale Co.* (1923), 261 U. S. 399, 426-428 (see, also, *Fleischmann Distilling Corp.* v. *Maier Brewing Co.* [1967], 386 U. S. 714, 717-718); *Bata* v. *Central-Penn National Bank* (1972), 448 Pa. 355, 293 A. 2d 343; *Lewis* v. *Lorenz* (1960), 144 Colo. 23, 354 P. 2d 1008; *Arvin, Inc.,* v. *Sony Corp. of America* (1975), 215 Va. 704, 213 S. E. 2d 753; *Ramstead* v. *Hauge* (1968), 73 Wash. 2d 162, 437 P. 2d 402. See, generally, the cases cited in Annotation, 43 A. L. R. 3d 793.[9]

No abuse of discretion appears in the order of the trial court permitting the three attorneys for the F. O. P. and the B. P. A. to share in a fee equal to that paid by special counsel to the city, and the award of attorney fees is accordingly affirmed.

## VIII.

The granting of a writ of prohibition is warranted only if the court or officer against whom it is sought is about to exercise judicial or quasi-judicial power.[10] The only aspect of this cause which could conceivably involve an exercise of quasi-judicial power is the issue of the validity of the provisions of Section 3, Rule 12, governing appeals by individuals who are passed over because of the "rule of three" and removed from the eligibility list. Since that issue is mooted by our holding that the "rule of three" is itself invalid, no grounds remain which would support the granting of a writ of prohibition. The granting of the writ of prohibition is accordingly reversed.

---

[9]In the only Ohio case which appears to have addressed this issue, *State, ex rel. Maple,* v *Hamilton* (1912), 19 C. C. (N. S.) 229, affirmed *State, ex rel. Voorhees,* v. *Cassingham* (1913), 88 Ohio St. 603, the charges of contempt were dismissed, which in itself precluded the award of costs.

[10]*State, ex rel. Gerhardt,* v. *Krehbiel* (1974), 38 Ohio St. 2d 90, 94; *State, ex rel. Northern Ohio Tel. Co.,* v. *Winter* (1970), 23 Ohio St. 2d 6, 8; *State, ex rel. Caley,* v. *Tax Comm.* (1934), 129 Ohio St. 83, 87.

## IX.

Part 6 of the judgment entry of the Court of Appeals and the granting of a writ of prohibition are hereby reversed. The judgment of the Court of Appeals is otherwise affirmed.

*Judgment affirmed in part and reversed in part.*

O'NEILL, C. J., HERBERT, CELEBREZZE, SWEENEY and LOCHER, JJ., concur.
P. BROWN, J., dissents.