Plaintiff-appellant Melissa R. Mascorro appeals from a judgment finding her in contempt of court for unjustified denial of visitation, and ordering her to pay defendant-appellee Michael G. Mascorro $1600 in attorney fees.
Melissa and Michael were divorced in Nueces County, Texas in April, 1996. Pursuant to the terms of the divorce decree, Melissa was awarded sole custody of the parties' minor child, Kelsy, who was born on January 2, 1994. Michael was granted visitation with Kelsy for a four-hour period on Saturdays and Sundays on alternate weekends, to be supervised by Melissa or a competent adult designated by her. Upon Kelsy's third birthday, Michael was to be allowed unsupervised visitation with Kelsy on alternate weekends, or for one weekend per month of his choice with seven days notice.
On January 3, 1997, Melissa filed a copy of the Texas divorce and parenting decree with the Montgomery County Court of Common Pleas, Domestic Relations Division, along with a motion to modify its provisions to require that Michael's visitation with Kelsy be supervised until further order of the trial court. On February 12, 1997, Michael filed a motion requesting the trial court to order Melissa to show cause why she should not be held in contempt for violating the terms of the divorce and parenting decree by refusing to allow him to exercise his visitation rights. Michael also requested that he be permitted to have reasonable telephone contact with Kelsy, and that he be awarded attorney fees if Melissa was found to be in contempt.
The trial court referred the matter to a magistrate, who held a hearing on Melissa's and Michael's respective motions on February 18, 1997. On February 28, 1997, the magistrate issued a Decision and Permanent Order rejecting Melissa's request for supervised visitation, and finding her in contempt for violating the visitation order contained in the parties' divorce and parenting decree. The magistrate imposed a $250 fine on Melissa, which he suspended on the condition that she abide by the court's orders in the future. The magistrate granted Michael's request that he be permitted to contact Kelsy weekly by telephone, but overruled his request for attorney fees "at this time." Melissa filed objections to the magistrate's decision, which the trial court overruled.
On June 2, 1997, Michael filed a second motion requesting the trial court to order Melissa to show cause why she should not be held in contempt for violating the visitation provisions of the parties' divorce and parenting decree. On June 4, 1997, Melissa filed a motion requesting an order suspending all unsupervised visitation by Michael with Kelsy "for the reason that Kelsy's well-being is threatened thereby due to emotional abuse" by Michael, as documented in a psychological evaluation report, prepared by Dr. Marcy Browning. On the same day Melissa filed her motion, the trial court issued an ex parte order suspending all unsupervised visitation by Michael with Kelsy until further order of the court.
An initial hearing was held on Michael's and Melissa's motions on July 16, 1997. Minutes before the hearing, Melissa's counsel provided Michael's counsel and the magistrate with an updated version of Dr. Browning's report, which contained new allegations that Kelsy was claiming that Michael had sexually abused her. Dr. Browning was the only witness to testify at the hearing. The hearing was confined to questions regarding Dr. Browning's qualifications; the parties were not permitted to delve into the substance of her report.
During the hearing, the magistrate expressed "disappointment" over the facts that Melissa's counsel had not given him a copy of the June 4th ex parte order and had not provided him with a copy of Browning's updated report until a few minutes before the hearing. The magistrate also commented at the hearing that "[u]nsubstantiated allegations of abuse are rampant once litigation has been involved," and that he deemed Melissa to be a "fairly hysterical" mother. The magistrate's comments prompted Melissa to file a motion on November 12, 1997, requesting the trial court to remove the magistrate from the case on grounds of bias and prejudice. The trial court overruled Melissa's motion.
A hearing on the merits of Melissa's and Michael's motions was held on November 21, 1997, and continued until July 20-21, 1998. Melissa presented the testimony of Dr. Browning, who stated that in her opinion, Kelsy had been sexually abused. Melissa also presented the testimony of Dr. Susan Brown, an Air Force physician, who examined Kelsy. Although Dr. Brown testified that she saw no physical signs of sexual abuse on Kelsy, she stated that was not uncommon. Dr. Brown also testified that Kelsy told her that Michael had sexually abused her. Also testifying at the hearing was court-appointed psychologist, Dr. Eugene Cherry, who found that Kelsy had not been abused by Michael.
On August 26, 1998, the magistrate issued a Decision and Permanent Order, overruling Melissa's motion in its entirety, and finding her in contempt of court for her "blatant denial of visitation." The magistrate sentenced Melissa to 30 days in jail and fined her $250, with both the sentence and fine suspended on condition that she "immediately cooperate totally with [Michael] in setting up each and every month's visitation period and stop her alienating behavior forthwith." The magistrate also ordered Melissa to pay Michael his attorney fees and costs, which were later determined to be $1,600.
Melissa filed objections to the magistrate's decision, arguing that while there may have been sufficient evidence presented to support the magistrate's finding that Michael did not sexually abuse Kelsy, there was no evidence presented to show that she had willfully denied Michael his visitation rights. The trial court overruled Melissa's objections, stating that "[d]espite her argument that the magistrate did not distinguish between finding that no abuse occurred, and finding that a reasonable belief [that Kelsy had been abused] did not exist, it seems apparent that [Melissa] was found not to have sufficient credibility in her claims."
Melissa appeals from the trial court's judgment overruling her objections to the magistrate's August 28, 1998 Decision and Permanent Order.
Melissa's first assignment of error alleges:
 THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING APPELLANT'S MOTION TO APPOINT ANOTHER MAGISTRATE TO HEAR AND DECIDE APPELLANT'S MOTION TO SUSPEND ALL UNSUPERVISED VISITATION BY APPELLEE DUE TO EMOTIONAL ABUSE BY APPELLEE AS FULLY SET FORTH IN A PSYCHOLOGICAL EVALUATION REPORT AND APPELLEE'S MOTION FOR CONTEMPT OF DENIAL OF VISITATION WHEN THE HEARING MAGISTRATE DEMONSTRATED A PRONOUNCED BIAS AND PREJUDICE AGAINST APPELLANT.
"The removal of a magistrate is within the discretion of the judge who referred the matter to the magistrate * * *."In re Disqualification of Wilson (1996), 77 Ohio St.3d 1250,1251. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. The terms "bias" or "prejudice" refer to "a hostile feeling or spirit of ill will on the one hand, or undue friendship or favoritism on the other, toward one of the litigants or his or her attorneys, with a formation of a fixed anticipatory judgment on the part of a judge as distinguished from an open state of mind which will be governed by the law and the facts." 22 Ohio Jurisprudence 3d (1998) 203, Courts and Judges, Section 126.
Melissa contends that the magistrate made several comments during the July 16, 1997 hearing which demonstrated that he was biased against her, her counsel, and her expert, Dr. Browning, and, therefore, should have been removed from the case. We disagree.
The magistrate did state that it was "highly irregular" that he had not been given a copy of Melissa's motion to suspend all unsupervised visitation and a copy of the trial court's ex parte
order suspending all such visitation until further order of the court. In addition, the magistrate indicated that he had a bias against ex parte orders. However, given our adversarial system of justice, it is not surprising that a judge or magistrate would have a general bias against ex parte orders or proceedings, which are "taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by, any person adversely interested." Black's Law Dictionary (6 Ed. 1990) 576.
Furthermore, as to the magistrate's expression of "disappointment" over the fact that he had not received a copy of Melissa's motion and ex parte order regarding unsupervised visitation, Melissa's attorney discussed this matter with the magistrate, who indicated that it was his preference that he be given copies of filings made in cases in which he was involved. Melissa's attorney responded by informing the magistrate that at the time he obtained the ex parte order, the trial judge had not told him that he needed to send a copy to the magistrate as well as opposing counsel. The magistrate replied that he would discuss the matter with the trial judge, and Melissa's counsel indicated that he was satisfied with the magistrate's response. While the magistrate should have made sure that Melissa's attorney had been made aware that he preferred to be given a copy of any filing made in the action before chastising him, the magistrate's statements do not demonstrate a bias or predisposition against Melissa or her attorney.
Melissa also argues that the magistrate's comments to her expert, Dr. Browning made it "obvious" that Browning's testimony "would be totally ignored." Again, we disagree. The magistrate questioned Dr. Browning about whether Melissa had provided her with a copy of his February 28, 1997 Decision and Permanent Order. When Dr. Browning indicated that she had not been given a copy of the decision, the magistrate gave her one, explaining that "[c]ertainly when a psychologist is brought on board, they need to know what has been done by the Court[,] [b]ecause in litigation matters, allegations of abuse are rampant." The magistrate, who stated that he had a doctorate in psychology, expressed disappointment in the fact that Melissa or her counsel did not provide Dr. Browning with a copy of his February 28, 1997 Decision and Permanent Order, and indicated that this failure prompted him to order the appointment of a psychologist to engage in an independent evaluation of the sexual abuse allegations. Additionally, the magistrate indicated that because of Dr. Browning's contacts with Melissa and her attorney, it was "difficult, possibly" for her not to have a biased view of the situation. After the hearing, the magistrate appointed Dr. Cherry to conduct an independent evaluation of the sexual abuse allegations.
None of the magistrate's actions or comments set forth above reflect a bias or predisposition against Melissa, her attorney, or her expert. It is reasonable for a magistrate to inquire as to whether a psychologist has been made aware of prior or pending litigation involving the parties, since such a fact can obviously have a bearing on the psychologists' evaluation. Furthermore, other courts in this state have noted that there is a significant percentage of false allegations of sexual abuse in child custody disputes. See, e.g., Kohlman v. Kohlman (Sept. 24, 1993), Ottawa App. No. 92OT046, unreported ("[t]he introduction of sexual abuse charges into bitterly contested custody actions seems to have become epidemic."). Additionally, it was appropriate for the magistrate to recognize the possibility of bias in Dr. Browning's evaluation, particularly in light of the fact that she is Kelsy's therapist, and to appoint Dr. Cherry to conduct an independent evaluation of Kelsy's allegations.
Finally, while the magistrate did express his view that Melissa was a "fairly hysterical" mother, he made this comment to Dr. Browning in an effort to explain to her why he believed Dr. Browning needed to involve the father in her future evaluations of the matter. Specifically, the magistrate advised Dr. Browning that, in his opinion, Melissa had demonstrated "perception problems" concerning Michael's intentions with respect to Kelsy. Notably, the magistrate's opinion that Melissa was a "fairly hysterical mother" was supported by Dr. Cherry's testing and observations of Melissa.
In light of the foregoing, Melissa's First Assignment of Error is overruled.
Melissa's Second Assignment of Error states:
 THE TRIAL COURT ABUSED ITS DISCRETION BY MERELY ADOPTING THE MAGISTRATE'S DECISION FINDING APPELLANT GUILTY OF CONTEMPT WHEN DETERMINING THAT THERE HAD BEEN NO SEXUAL ABUSE OF THE PARTIES' MINOR CHILD BY APPELLEE AND THEREFORE THE ALLEGATION WAS FALSE WHICH HAD BEEN ASSERTED BY APPELLANT FOR THE PURPOSE OF DELIBERATELY DENYING APPELLEE VISITATION WITH THE PARTIES' MINOR CHILD, DESPITE APPELLANT'S RELIANCE ON THE CHILD'S THERAPIST, A PSYCHOLOGIST SPECIALIZING IN THE AREA OF CHILD ABUSE.
Melissa argues that the trial court abused its discretion by finding her in contempt for her "blatant" denial of visitation, because, in denying Michael unsupervised visitation with Kelsy, she was acting in reasonable reliance upon Dr. Browning's opinion that Kelsy had been sexually abused by Michael. Therefore, Melissa asserts, there is no evidence that she willfully denied Michael unsupervised visitation with Kelsy.
However, where "the purpose of sanctions in a case of civil contempt is to compel the contemnor to comply with lawful orders of a court, * * * the fact that the contemnor acted innocently and not in intentional disregard of a court order is not a defense to a charge of civil contempt." Windham Bank v. Tomaszczyk (1971),27 Ohio St.2d 55, paragraph three of the syllabus. Here, two of the three sanctions imposed against Melissa, to wit: her 30-day jail sentence and fine, were made conditional upon her agreeing to facilitate Michael's monthly, unsupervised visitation with Kelsy, and by arranging counseling for herself and Kelsy for the separation anxiety arising from the visitation. Because the sanctions of a jail sentence and fine were imposed merely to ensure compliance with lawful orders, Melissa's contention that she did not willfully deny Michael his right to unsupervised visitation is of no consequence with respect to this portion of the trial court's order.
The third sanction imposed against Melissa, i.e., that she pay Michael $1,600 in attorney fees, was a remedial measure designed to compensate Michael for his expenses in bringing the contempt action. A trial court has discretion to award a complainant his reasonable attorney fees in a civil contempt action. See State ex rel. Fraternal Order of Police v. Dayton
(1977), 49 Ohio St.2d 219, syllabus.
Melissa would argue that it was an abuse of discretion for the trial court to award attorney fees to Michael in this case, because of her reliance on Dr. Browning's opinion that Michael had sexually abused Kelsy. Ordinarily, such an argument would not be without considerable force. However, the evidence in this case demonstrated that Melissa has made several attempts to deny Michael visitation with Kelsy which have coincided with the occurrence of Kelsy's third birthday, the date upon which Michael became entitled to unsupervised visitation with her under terms of the parties' parenting decree.
For instance, in November, 1996, Melissa filed a petition alleging that Michael had engaged in domestic violence against her, which resulted in Michael's visitation with Kelsy being temporarily suspended. A protection order was filed on December 5, 1996. In reviewing that action, the magistrate noted that the most recent allegation of violence that resulted in the domestic violence petition being filed "would not be deemed domestic violence from the testimony obtained at this hearing." The magistrate noted that the other incidents, which allegedly occurred in 1994 and 1995 would be deemed domestic violence if they had, in fact, occurred. However, the incidents were never proven to have occurred, since the parties entered into a consent agreement to stay away from one another. Although Melissa denied that she filed the domestic violence petition against Michael in order to interfere with his visitation of Kelsy, her credibility was a matter primarily for the magistrate and the trier of fact. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus (in either civil or criminal trial, the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of facts).
Melissa again tried to have Michael's right to unsupervised visitation with Kelsy suspended in her January 3, 1999 motion to modify the parties' parenting decree, wherein she alleged that, during a telephone conversation, Michael had threatened to break into her residence, kidnap Kelsy, and harm her (Melissa) in the process. Melissa further alleged that on a supervised visit in June, 1996, Michael shoved her into a doorjamb and attempted to take Kelsy from her residence before he was stopped from doing so by members of her family. The magistrate rejected Melissa's allegations, and found her in contempt. It was during these proceedings that the magistrate noted that Melissa had certain "perception problems" regarding Michael's intentions towards Kelsy. For example, the magistrate rejected Melissa's claims that during a supervised visit at her house, Michael pushed her into a doorjamb, and tried to "snatch" Kelsy and drive away with her, because the visitation was taking place in Melissa's house with Melissa's relatives present and nearby, and Michael is in the military, and, thus, could have been located easily had he tried to kidnap Kelsy.
Melissa's most recent attempt to suspend Michael's right to unsupervised visitation came after Michael had filed his June 2, 1997 motion requesting that Melissa be ordered to show cause why she should not be held in contempt for refusing to allow him to exercise unsupervised visitation with Kelsy in May, 1997. In response, Melissa filed a motion on June 4, 1997, alleging that Kelsy was being subjected to "emotional abuse" by Michael. However, Melissa did not initially allege that Michael had sexually abused Kelsy. In fact, Melissa did not raise the allegations of sexual abuse in this latest action between the parties until she made them known to the magistrate through an updated report of her psychologist in July, 1997. Thus, Melissa's refusal to allow Michael to exercise his right to unsupervised visitation in May, 1997, and her subsequent attempt to suspend Michael's right to unsupervised visitation took place before she even raised allegations that Michael had sexually abused Kelsy.
According to Dr. Cherry, Kelsy's problems with Michael arise from a severe case of separation anxiety, coupled with a need to please her mother, including saying things that she deems her mother wants to hear. Dr. Cherry placed blame on both parties for Kelsy's condition, but the evidence shows that Melissa has unquestionably aggravated Kelsy's condition by repeatedly interfering with Michael's attempts to have regular visitation with his daughter. If this were a case where Melissa denied Michael unsupervised visitation simply on the basis of Kelsy's allegations of sexual abuse, coupled by Dr. Browning's opinion that the allegations were authentic, then the result of this case probably would have been different. However, given the circumstances of this case which demonstrate a clear pattern of Melissa trying to deny Michael's right to unsupervised visitation, we cannot say that the trial court abused its discretion in awarding Michael his reasonable attorney fees.
Accordingly, Melissa's Second Assignment of Error is overruled.
Having overruled both of Melissa's assignments of error, the judgment of the trial court is affirmed.
GRADY, P.J. and YOUNG, J., concur.
(Hon. George M. Glasser, Retired from the Court of Appeals, Sixth Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).