**CITY OF CLEVELAND, Appellee,**

v.

**ABRAMS et al., Appellants.**

[Cite as *Cleveland v. Abrams,* 177 Ohio App.3d 68, 2008-Ohio-3018.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 89904 and 89929.

Decided June 19, 2008.

Robert J. Triozzi, Director of Law, and William H. Armstrong Jr., and Patricia McGinty Aston, Assistant Directors of Law, for appellee.

Paul M. Greenberger, for appellant Ian J. Abrams.

Joseph W. Diemert Jr. & Associates Co., Joseph W. Diemert Jr., and Diane A. Calta, for appellant the Scrap Yard, L.L.C.

---

ANTHONY O. CALABRESE JR., Presiding Judge.

{¶ 1} Defendant-appellant Ian Abrams and defendant-appellant the Scrap Yard, L.L.C. ("Cleveland Scrap") appeal the decision of the Cleveland Housing Court. Having reviewed the arguments of the parties and the pertinent law, we reverse and remand.

I

{¶ 2} On April 25, 2006, the city of Cleveland filed a complaint for injunctive relief. The city's complaint sought to enjoin Ian Abrams and Cleveland Scrap from operating a scrap business on the property located at 3018 East 55th Street in Cleveland, Ohio. The city's complaint alleged various zoning code violations on the part of appellants. The city alleged violations of numerous sections of the Cleveland Codified Ordinances, specifically Cleveland Codified Ordinances 327.02(c), 676.02, 345.02, 347.06(d), 3105.01(a), and 3101.10(E).

{¶ 3} After preliminary negotiations, the parties agreed that the appellants (Abrams on behalf of Cleveland Scrap) would apply to the city and appeal to the board of zoning appeals for three variances at the property. The three variances were (1) to expand the use of the scrap yard into the residence-industry area, (2) to expand the use of the scrap yard to the hilltop and for auto wrecking at the property, and (3) to change the use of adjacent land from automobile storage to scrap-yard and auto-wrecking use.

{¶ 4} In June 2006, an agreed judgment entry was submitted to the housing court, in which the parties agreed that Abrams and Cleveland Scrap would continue operating at the property pending the board of zoning appeals' hearing, would keep the residence-industry area of the property clear of all containers, scrap, and debris, and would maintain Sweeney Road clear of trash and debris while the case was pending.

{¶ 5} On July 17, 2006, the board of zoning appeals held a public hearing in which it heard the variance requests by Abrams. After the public hearing, the board of zoning appeals denied all three variance requests. On September 11, 2006, the housing court held a preliminary injunction hearing on the city's complaint. On September 14, 2006, the housing court issued a judgment entry and order granting a preliminary injunction against Cleveland Scrap. This order, in effect, ceased the operation of the scrap yard on an expanded portion of the

property commonly referred to as "the hilltop." The housing court denied the city's request for an injunction against Ian Abrams.

{¶ 6} On September 19, 2006, Abrams and Cleveland Scrap filed their notice of appeal and praecipe in case No. 88766 and cited R.C. 2505.02(B)(4) as the basis for their appeal. On September 27, 2006, the parties and their counsel met at the property to measure and document the approximate height and volume of the scrap piles as ordered by the court in its injunction order. On September 28, 2006, Abrams and Cleveland Scrap filed objections to the magistrate's decision with the lower court. On October 10, 2006, the city filed its response to the objections and made one objection to a conclusion of law in the magistrate's decision. On October 13, 2006, the trial court found that it lacked jurisdiction to rule on any objections to the magistrate's decision and ordered the clerk to transmit the file to this court.

{¶ 7} On October 17, 2006, Abrams and Cleveland Scrap filed a motion to remand with this court requesting that this court remand the previously filed appeal case to the lower court to rule on the objections to the magistrate's decision. On October 26, 2006, the city filed its response in this court, objected to any remand of the case to the lower court, and requested that this court hear and determine the merits of the first appeal.

{¶ 8} On October 27, 2006, Abrams and Cleveland Scrap served the city with a motion for relief from judgment filed with the housing court. On that same day, the housing court served the parties with the App.R. 9(C) statement of the testimony and evidence presented at the injunction hearing, and Cleveland Scrap filed a second motion to remand with this court requesting that it remand the first appeal case to the housing court to rule on the motion for relief from judgment. On November 6, 2006, the city filed its response to Cleveland Scrap's motion to remand for a Civ.R. 60(B) ruling in this court and again objected to any remand of the case. On November 27, 2006, this court, sua sponte, dismissed the first appeal for not being a final, appealable order. Neither party appealed that decision. On January 3, 2007, the housing court overruled the objections to the magistrate's decision and set a pretrial conference for January 29, 2007.

{¶ 9} On January 24, 2007, counsel for the city sent a letter to counsel for Cleveland Scrap that requested compliance with the injunction order. On January 29, 2007, a pretrial conference was held in the housing court with all counsel present, and a discovery schedule was set. On March 21, 2007, the city filed a motion to show cause as to why Cleveland Scrap should not be held in contempt for failing to comply with the outstanding court's injunction order.

{¶ 10} On April 23, 2007, the housing court held a show-cause hearing in which Cleveland Scrap was permitted to be heard and present any testimony and evidence in defense against the city's contempt allegations. On April 30, 2007,

the housing court issued a contempt order that gave Cleveland Scrap an opportunity to purge itself of the contempt finding and set a further hearing for May 14, 2007, on the contempt. On May 14, 2007, the housing court held a status conference. On May 17, 2007, the housing court issued its contempt order with sanctions, which was journalized on May 22, 2007.

{¶ 11} On May 23, 2007, Cleveland Scrap filed its notices of appeal in the housing court and at that same time also filed in the housing court its motion for an immediate stay of the proceedings and to set bond. On May 30, 2007, Abrams filed his notice of appeal in the housing court. This court consolidated the separately filed appeals for disposition. The housing court ruled on Cleveland Scrap's motion to set bond and granted a stay of execution upon the posting of a supersedeas bond of $8.5 million. On July 11, 2007, this court lowered the bond for a stay of execution upon the posting of bond in the amount of $1 million. Cleveland Scrap never posted any bond. On August 27, 2007, Abrams and Cleveland Scrap filed their appellant briefs.

{¶ 12} Ian Abrams is the current owner of the property lots located at 3018 East 55th Street, Cleveland, which are identified as permanent parcel numbers 123–13–001 and 123–13–005. Cleveland Scrap is the tenant that has operated a junk and scrap yard at the property since 2002.

{¶ 13} Abrams was the person in control of both the property and Cleveland Scrap at the time the city's complaint was filed until October 2006, after the preliminary-injunction hearing was held, when the scrap yard company was sold to Allen Youngman. Abrams purchased the original scrap yard areas sometime in the late 1960s. Abrams then acquired the back portion of the original parcel (non-hilltop area) in approximately 1975, which had previously been used as a furniture warehouse. He then acquired the hilltop area of the property sometime in the 1980s from the railroad, and the deed for the hilltop was recorded for the area of the property in 1985. Prior to the purchase of the hilltop area, it was used by the railroad for storage and repairs.

## II

{¶ 14} Appellant Ian Abrams puts forth nine assignments of error in his brief, and appellant Cleveland Scrap puts forth four assignments of error. Abrams's assignments of error provide the following:

{¶ 15} "I. The trial court erred by ordering, at JE, 9/14/06, par. 1, the removal of 'all junk vehicles * * * from the scrapping area,' resulting in the complete cessation of the processing into scrap metal of either automobiles or the parts thereof, which conduct, per se, establishes neither auto wrecking, nor renders the

property an automobile wrecking yard unless performed to the degree or intensity defined by the Zoning Code."

{¶ 16} "II. The trial court erred by ordering Appellant Cleveland Scrap to remove a 'crude ramp made of debris by a gate in the fence' [JE, 4/30/07, p. 5; JE, 9/14/06, par. 5] in order to maintain 'vacated' Sweeney Avenue free of debris."

{¶ 17} "III. The trial court erred by enforcing unconstitutionally vague, and/or ambiguous fencing standards, and by further ordering that Appellant Cleveland Scrap 'shall * * * modify or outfit [the fencing] to make it non-transparent,' PI, par. 3, because there is no applicable ordinance by which the term 'non-transparent' is unmodified by the phrase 'slightly solid.' "

{¶ 18} "IV. The trial court erred at JE, 9/15/06, par. 1, 6, 7, & 8, by requiring a certificate of occupancy for the outdoor use, outdoor expansion of use, and /or the outdoor change of use because the Cod. Ord. do not authorize the issuance of a COO therefor."

{¶ 19} "V. The trial court erred at JE, 9/14/06, par. 7 & 8, by retroactively applying to Appellants' lawful, prior, nonconforming use of the property, the 3 feet over fence height scrap pile limitation of 347.06(d), eff. 6–4–70, and by applying said 3 feet limitation without regard to topography."

{¶ 20} "VI. The preliminary injunction cannot be enforced because Plaintiff's conduct herein sets the bar for 'unclean hands.' "

{¶ 21} "VII. The trial court erred at JE, 9/14/06, par. 2, by ordering the cessation of the storage of containers on the so-called 'footbridge' portion of the property zoned residence industry."

{¶ 22} "VIII. The trial court exceeded its authority by issuing and enforcing a preliminary injunction which goes beyond maintaining the status quo by ordering affirmative relief."

{¶ 23} "IX. The trial court erred by denying Abrams standing to participate in the Cleveland Scrap contempt hearing."

{¶ 24} In addition to Abrams's assignments of error above, appellant Cleveland Scrap puts forth four assignments of error of its own. They are as follows:

{¶ 25} "I. The lower court erred when it found The Scrap Yard, LLC in contempt of court of its September 14, 2006 preliminary injunction order because the order was vague and not specific enough to enforce scrap pile height limitations and prohibit operations on the hilltop."

{¶ 26} "II. The lower court erred when it found The Scrap Yard, LLC in contempt of court for violating its September 14, 2006 preliminary injunction order for failing to adhere to city of Cleveland codified ordinances imposing junk pile height limitations and screening requirements."

{¶ 27} "III. The lower court erred when it found The Scrap Yard, LLC in contempt of court of its September 14, 2006 preliminary injunction order when it determined that the operations on the hilltop should cease."

{¶ 28} "IV. The lower court erred when it found The Scrap Yard, LLC in contempt of court for violating its September 14, 2006 preliminary injunction order without a finding of clear and convincing evidence that it was in violation of any city of Cleveland codified ordinances."

III

{¶ 29} Cleveland Scrap's first assignment of error states that the preliminary-injunction order was vague and not specific enough to enforce limits on the height of scrap piles and prohibit operations on the hilltop. Specifically, Cleveland Scrap argues that the lower court erred in finding it in contempt of the preliminary injunction because it does not state with mathematical precision how to enforce the pile-height limits or define the hilltop area. Cleveland Scrap further argues that the injunction order is not specific in terms and violates Civ.R. 65(D). Civ.R. 65(D) states:

{¶ 30} "(D) Form and scope of restraining order or injunction.

{¶ 31} Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; *shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained* ; and is binding upon the parties to the action, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the order whether by personal service or otherwise." (Emphasis added.)

{¶ 32} The purpose of Civ.R. 65(D) is to "prevent uncertainty and confusion on the part of those faced with injunctive orders and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard* (1974), 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661.

{¶ 33} Civ.R. 65(D) provides that every order granting an injunction and every restraining order shall set forth the reasons for its issuance, shall be specific in terms, shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained. This rule is identical to the federal rule. The decree sought to be enforced must not be too vague to be understood. *State ex rel. Fraternal Order of Police, Captain John C. Post Lodge No. 44 v. Dayton* (1977), 49 Ohio St.2d 219, 3 O.O.3d 360, 361 N.E.2d 428.

{¶ 34} The trial court's preliminary-injunction order in this case is vague and unclear. Indeed, Cleveland Scrap filed several motions requesting modification or clarification of various items. Cleveland Scrap filed a "motion for clarification," an "additional request for clarification," a "second additional request for clarification," and a "request for modification of the order." [1]

{¶ 35} The preliminary-injunction order states that Cleveland Scrap "shall have decreased the height of the piles on the side covered by the certificate of occupancy by 20%. These reductions shall continue at a rate of 20% for every 14 days, until such time as the height of the piles on the section covered by the certificate of occupancy is no more than three feet higher than the fence, and the piles on the side not covered by the certificate of occupancy are gone, or until this order is modified by the court."

{¶ 36} The order does not specifically identify the area covered by the certificate of occupancy, and it is not clear how the piles of scrap should be measured. The order requiring that Cleveland Scrap decrease the height of the scrap piles by 20 percent until the piles are not more than three feet higher than the fence is unclear. The order does not specify whether Cleveland Scrap should measure the 20 percent reduction against the original pile height or against the pile height after subsequent reductions.

{¶ 37} It is not clear at what part of the fence any given pile of scrap should be measured against. Additionally, the order does not address how the piles of scrap located on the hilltop area of the property should be measured in light of the fact that the hilltop area, when viewed from the corner of East 55th Street and Sweeney Avenue, already extends far above any suggested height limitation tied to fencing on the property, and the hilltop alone, without any piles of scrap, could violate the preliminary injunction order. Indeed, the trial court stated that the junk-pile-height ordinance lacks mathematical precision.

{¶ 38} Moreover, neither the preliminary-injunction order nor the contempt order provides a description of the area covered by the certificate of occupancy or the hilltop area. There are no dimensions mentioned and no legal description contained therein or map included depicting the area covered by the certificate of occupancy or the hilltop.

{¶ 39} If a contempt order is premised on a party's failure to obey an order of the court, then the order must be clear and definite, unambiguous, and

---

1. February 27, 2007, motion for clarification of preliminary injunction filed by defendants, May 30, 2007, defendants' notice of compliance filed, May 31, 2007, defendants' notice of compliance and motion for reduction of bond, June 1, 2007, defendants' additional request for clarification, June 1, 2007, defendants' second additional request for clarification, June 1, 2007, defendants' request for modification of order filed.

not subject to dual interpretations, and the contemnor must have knowledge of the order. This rationale must also be applied to the actual order of contempt. In order for parties to comply with an order of contempt, they must be able to clearly understand the penalty imposed. *Tornstrom v. DeMarco* (Mar. 14, 2002), Cuyahoga App. No. 79521, 2002 WL 407921.

{¶ 40} The court order in the case at bar is confusing, vague, ambiguous, and subject to more than one interpretation. Moreover, the details regarding the enforcement of the scrap piles' heights and areas covered by the certificate of occupancy are not specific. Accordingly, based on the evidence presented, we find the lower court's preliminary-injunction and contempt orders to be improper. The injunction was not specific in its terms and violated Civ.R. 65(D). Accordingly, Cleveland Scrap's first assignment of error is sustained.

{¶ 41} Cleveland Scrap was unable to clearly understand the preliminary injunction order. The contempt order is based on the unclear and ambiguous preliminary-injunction order.

{¶ 42} Accordingly, the contempt order and the underlying preliminary-injunction order are improper and invalidated in their entirety, and this case is remanded to the lower court for further proceedings in accordance with this decision.

{¶ 43} Based on the disposition of Cleveland Scrap's first assignment of error, the remaining assignment of errors are moot.

Judgment reversed
and cause remanded.

KILBANE, J., concurs.

STEWART, J., dissents.

MELODY J. STEWART, Judge, dissenting.

{¶ 44} I respectfully dissent because the court's contempt order accurately defined how the piles of scrap should be removed and gave adequate notice of that part of the property covered by the order.

{¶ 45} In *Superior Sav. Assn. v. Cleveland Council of Unemployed Workers* (1986), 27 Ohio App.3d 344, 27 OBR 402, 501 N.E.2d 91, we stated that Civ.R. 65(D) requires that an injunctive order be specific and detailed enough to give adequate notice of the requirements imposed and not be too vague to be understood. "Adequate notice" under Civ.R. 65(D) is that which an ordinary person reading the order would understand as being proscribed or prohibited. *Planned Parenthood Assn. v. Project Jericho* (Feb. 8, 1989), Hamilton App. No. C–860550, 1989 WL 9312.

{¶ 46} Employing the ordinary-person standard used in Civ.R. 65(D) shows that the court's injunction was not so vague that Cleveland Scrap could not be expected to understand what area described as the hilltop was subject to the contempt order. The hilltop was described by the certificate of occupancy as "7.6 acres for processing & recycling scrap metals." The certificate also described the zoned property as "general industry." These descriptions were part of the legal description of the land, and were clear enough to inform the ordinary person of the area covered by the injunction. In fact, this 7.6 acres of land corresponded exactly to the land covered by Abrams's request for a variance. Any ordinary person would have known exactly what land was encompassed by the court's order.

{¶ 47} Even if this language were somehow vague, Cleveland Scrap waived the right to raise it on appeal because it did not at any time in the proceedings challenge the actual area defined by the court's order. As the city notes, the court very early on found that none of the parties had any questions about what part of the land was covered by the original certificate of occupancy to conduct scrap operations. By not raising an objection at that time, Abrams and Cleveland Scrap have waived the right to assert error on appeal.

{¶ 48} I would also find that the injunction is not vague as to the requirement that the scrap piles be reduced by 20 percent. The city's ordinances require a minimum seven-foot-high fence and further provide that scrap materials can be piled no higher than three feet over the top of the fence. Cleveland Scrap used seven-foot-tall fences, and the pictorial evidence suggests that some of the piles were close to 20 feet tall. Regardless whether the initial 20-foot-high pile had to be reduced in equal 20 percent increments from the initial measurement, or whether each succeeding reduction had to be 20 percent from the previous reduction, the incremental numbers are so closely matched that any differences between them would be so minimal as to be of no practical legal effect. No ordinary person could be confused by the court's order.