OPINION
Defendant-appellant, Mark McEnery, appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting in part appellant's motion to modify child support, granting plaintiff-appellee, Renee McEnery's, motion for contempt for appellant's failure to pay child support, property settlement payments, and other payments as ordered by the trial court, and dismissing appellee's motion for contempt for violation of the shared parenting plan.
The parties were married on March 17, 1990. Two children were born as issue of the marriage: Jennica, born March 13, 1992, and Taylor, born June 7, 1994. On September 24, 1996, appellee filed a complaint for divorce. An Agreed Entry Decree of Divorce was filed with the court on February 20, 1997. At the time of the divorce, appellant owned two businesses, McEnery Construction Company and RMB Investments, while appellee was unemployed. In the divorce decree, appellant kept McEnery Construction Company and retained ownership of RMB Investments, but was ordered to pay appellee as a cash settlement $125,000 in monthly installments of $718.39 for one hundred seventy-four months. The "Cash Settlement" section of the divorce decree states:
 Defendant shall pay Plaintiff, as and for a cash property settlement, the sum of $125,000 payable in equal monthly installments of $718.39, beginning March 15, 1997 and continuing each month thereafter, on the fifteenth of each month for a total of one hundred seventy-four (174) months until said amount has been paid in full. * * *
 This obligation of Defendant to make payments to Plaintiff for property settlement, shall not be considered to be a dischargeable debt under the Bankruptcy Code of the United States of America, and attempted discharge of such debt is agreed by the parties to be an event which would have consequences detrimental to Plaintiff, which consequences would not be outweighed by any benefit to Defendant.
Appellant also agreed to pay spousal support in the amount of $900 per month for three years, and child support in the amount of $1,381.92 per month until the children reach the age of eighteen.
After the divorce, appellant's construction business folded, and he transferred his interest in RMB Investments to his mother and moved to Arizona to start a job as a project manager for a construction company. Appellant ceased making his court-ordered support and property settlement payments, resulting in appellee's filing of a contempt motion on June 9, 1998. At the contempt hearing before the magistrate on July 29, 1998, appellant testified that he could earn $50,000 per year. In addition, appellant testified that he had filled out an application for credit, which stated that he had a yearly income of $87,000 per year, plus $20,000 per year in profits from rental properties. In a magistrate's decision filed on August 7, 1998, the magistrate found appellant in contempt for failure to pay child support, spousal support, property settlement, bills, and for failure to maintain his life and disability insurance. The magistrate determined that appellant could earn $50,000 per year and ordered him to seek employment. The magistrate sentenced appellant to fifteen days in jail but suspended the sentence provided that appellant purge his contempt. Although appellant filed objections to the magistrate's decision, he subsequently dismissed the objections.
On September 11, 1998, appellant filed a Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for Arizona. However, appellee obtained a relief from stay, which was filed with the trial court on February 25, 1999, permitting the trial court to continue with the litigation.
On March 2, 1999, appellee filed a motion to enforce the magistrate's decision of July 7, 1998, arguing that appellant was still in arrears on his court-ordered payments. A second motion for contempt was filed by appellee on March 2, 1999, for failure to comply with court orders. The trial court granted appellant's motion to enforce on June 29, 1999, and sentenced appellant to serve fifteen days incarceration. On July 8, 1999, appellant filed a motion to modify child support stating that his income had decreased substantially, that he had filed bankruptcy, and that he was forced to sell his remaining assets to pay his obligations. The parties reached an agreement for appellant to pay the remainder of his spousal support obligation to appellee and all attorney fees awards owed to appellee through July 13, 1999, and this agreement was journalized in a court entry filed August 6, 1999. Appellee filed a motion for contempt on August 19, 1999, for appellant's alleged violation of the shared parenting plan.
At the hearing before the trial court on the pending motions on October 19, and October 22, 1999, appellant testified that he quit his job making $50,000 per year because he did not agree with the business practices of his employer. He also indicated that, despite his testimony in earlier hearings, he no longer believed that he could earn $50,000 per year because he did not have the qualifications or experience to do commercial construction projects. Appellant had been employed by his current wife's aerial photography company and had received wages, but could not identify where those earnings were reflected in his tax return. Appellant also testified that he had obtained his Michigan contractor's license and that he had started a new company called Tabula Rassa Construction Company doing remodeling work. Appellant indicated that he had earned $21,025.33 in income from his remodeling work between January 1999, and the hearing date of October 19, 1999.
In its decision, the trial court found appellant's testimony was not credible as to his income and again imputed an income of $50,000 to him. However, since appellee was now employed and earning $17,000 per year, the trial court modified appellant's child support obligation to $968.58 per month, plus two percent processing charge, for a total of $1,006.31. The trial court found appellant in contempt for failure to comply with the court's orders and sentenced him to sixty days incarceration. The trial court provided appellant the opportunity to purge his contempt by paying over a six-month period the sum of $10,899.92, which included amounts for two unpaid credit card bills, unpaid medical bills, and attorney fees. Although the trial court found a child support arrearage of $12,211.18 and that appellant owed $1,315 for tuition, the trial court's decision did not specify when these amounts were to be paid. The trial court also found an arrearage of $14,386.19 in appellant's property settlement payments and ordered appellant to pay an extra $80 per month towards the arrearage, for a total monthly property settlement payment of $798.39. The trial court ordered appellant to pay appellee for the amount of the second mortgage, $25,297.19, plus ten percent statutory interest per annum, at the rate of $500 per month beginning on June 1, 2000. Finally, appellant was ordered to obtain disability and life insurance as required by the divorce decree. The trial court dismissed appellee's contempt motion related to alleged violations of the shared parenting plan. Appellant filed a timely notice of appeal.
On appeal, appellant raises six assignments of error:
 I. THE LOWER COURT ERRED TO THE PREJUDICE OF APPELLANT BY ABUSING ITS DISCRETION IN AWARDING ATTORNEY FEES TO PLAINTIFF.
 II. THE LOWER COURT ERRED WHEN IT AWARDED ATTORNEY FEES, WHICH WERE NOT REASONABLE.
 III. THE COURTS [sic] AWARD OF EXCESSIVE SUMS TO PLAINTIFF TO PURGE THE CONTEMPT OF DEFENDANT, WAS NOT FAIR, EQUITABLE OR IN ACCORDANCE WITH THE LAW AND IS AN ABUSE OF DISCRETION.
 IV. THE ORDER THAT DEFENDANT PAY MONIES TO PLAINTIFF UNDER THE THREAT OF INCARCERATION WHEN THERE WAS NO FINDING OF ABILITY TO PAY WAS ERROR.
 V. IN DETERMINING THE NEW AMOUNT OF CHILD SUPPORT THE COURT FAILED TO CONSIDER THE FACT THAT THE CHILDREN'S PRIVATE SCHOOL TUITION OF $2,400 PER YEAR IS BEING PAID BY DEFENDANT.
 VI. THERE IS NO EVIDENCE IN THE RECORD THAT SUPPORTS THE COURTS [sic] FINDING THAT DEFENDANT OWES PLAINTIFF $125,000 IN PROPERTY SETTLEMENT.
We address appellant's first two assignments of error together. Appellant asserts that the trial court abused its discretion by awarding attorney fees to plaintiff and awarding attorney fees that were unreasonable. We disagree.
An award of attorney fees in a domestic relations action is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. Goode v. Goode (1991), 70 Ohio App.3d 125,134. However, a party requesting attorney fees must prove that the fees were actually incurred and that they are reasonable and necessary. Id. An abuse of discretion requires more than an error of law or judgment, but, instead, it entails an action of the trial court that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
Appellant contests the award of attorney fees by asserting that the trial court did not follow R.C. 3105.18(H), which provides that the court may award reasonable attorney fees to either party at any stage of the proceedings if it determines that the other party has the ability to pay. Appellant argues that he does not have the ability to pay attorney fees and supports this argument with the fact that he has filed for bankruptcy.
Here, the trial court awarded appellee $300 in attorney fees for having to defend the foreclosure action that resulted from appellant's failure to pay the second mortgage as ordered in the divorce decree. The trial court also awarded appellee $1,846.25 in attorney fees for having to defend against appellant's bankruptcy action in Arizona. The trial court awarded appellee $3,630.67 in attorney fees incurred in prosecuting her contempt motion. Thus, the trial court awarded appellee a total of $5,776.92 in attorney fees.
The award of $3,630.67 in attorney fees for appellee's contempt motion was pursuant to R.C. 3109.05(C), which states, in pertinent part:
 If any person required to pay child support under an order made under division (A) of this section * * * is found in contempt of court for failure to make support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court that arose in relation to the act of contempt * * *. [Emphasis added.]
Thus, there is no requisite showing of "ability to pay," as appellant asserts, pursuant to R.C. 3109.05(C). In fact, attorney fees are automatically assessed to the adverse party under R.C. 3109.05(C). In addition, the Supreme Court of Ohio has held that a trial court has discretion to award reasonable attorney fees against a party found guilty of civil contempt even in the absence of a statute specifically authorizing attorney fees. State ex rel. Fraternal Order of Police v.Dayton (1977), 49 Ohio St.2d 219, 220-221.
Appellant argues that the award of $1,846.25 in attorney fees to appellee in defending the bankruptcy action was an abuse of discretion, in that the trial court had no authority to award attorney fees related to actions in federal court. On September 11, 1998, appellant filed Chapter 7 bankruptcy in Arizona in an attempt to discharge his obligations under the divorce decree, despite specifically agreeing in the divorce decree that the property settlement was non-dischargeable. The remaining $300 in attorney fees was awarded as a result of appellant's failure to pay the second mortgage as required by the divorce decree. Appellant's failure to pay the second mortgage resulted in a foreclosure action against appellee, causing her to incur attorney fees in defending the litigation.
We find that the award of attorney fees was proper. Appellant's attempt to discharge the property settlement and his failure to pay the second mortgage were direct violations of the terms of the divorce decree, and his failure to abide by these court orders was part of the basis of contempt findings by the magistrate and the trial court. Thus, an award of attorney fees to enforce the terms of the divorce decree was proper under the Supreme Court of Ohio's holding in State ex rel. FraternalOrder of Police. Additionally, the trial court could have awarded these fees under R.C. 3105.18(H), which allows attorney fees to be awarded in "any proceeding to enforce a prior order or decree." However, if attorney fees were awarded under R.C. 3105.18(H), then the trial court would have had to make a finding of ability to pay, as appellant asserts.
Appellant also challenges the reasonableness of the attorney fees award. Appellee introduced detailed exhibits itemizing the attorney fees incurred, and a domestic relations practitioner with eleven years of experience testified as to the reasonableness of the amount of fees incurred in prosecuting the contempt action. Moreover, this court has determined that a trial court is able to evaluate the work performed by an attorney in a domestic relations action and to determine if fees are reasonable merely by reviewing the record. Ward v. Ward (June 18, 1985), Franklin App. No. 85AP-61, unreported.
Upon review of the record, we find that the trial court did not abuse its discretion in awarding attorney fees. Therefore, appellant's first and second assignments of error are overruled.
We address appellant's third and fourth assignments of error together. Appellant asserts that the trial court's award of excessive sums to appellee to purge the contempt was not fair, equitable or in accordance with law, and that it was an abuse of discretion, since there was no finding of appellant's ability to pay. We disagree.
The standard of review for a contempt finding and purge order was summarized by the Court of Appeals for Erie County in Burchette v.Miller (1997), 123 Ohio App.3d 550, 552:
 Judicial sanctions for civil contempt may be employed to coerce a defendant into compliance with a court order. * * * Such sanctions will not be reversed unless there has been an abuse of discretion. * * *
 However, a sanction for civil contempt must allow the contemnor the opportunity to purge himself or herself of contempt. * * * The trial court abuses its discretion in ordering purge conditions that are unreasonable or where compliance is impossible. * * * [Citations omitted.]
Appellant argues that he has insufficient income and assets to comply with the purge order within the time frame set by the trial court and no ability to borrow any money due to his bankruptcy. Thus, appellant asserts that it is impossible for him to comply with the purge order and that the purge order is unreasonable.
As noted above, the trial court found appellant in contempt for failure to pay obligations as required by the divorce decree and ordered appellant to purge his contempt by making various payments over a one-hundred-eighty-day period. Specifically, appellant was ordered to pay:
1. $2,018.25 on the Advanta Fleet Visa Card within sixty days;
2. $1,901 on the Huntington Bank account within ninety days;
3. $1,203.75 in medical bills within 120 days; and
4. $5,776.92 in attorney fees within 180 days.
These payments total $10,899.92. A careful review of the trial court's decision indicates that the trial court also found a child support arrearage of $12,211.18 and unpaid tuition in the amount of $1,315, but the trial court did not set a schedule for appellant to pay these amounts. The payments, pursuant to the purge order, are in addition to appellant's monthly child support obligation, which was reduced to $986.58 per month plus processing charge, for a total of $1,006.31 per month. Additionally, the trial court found a property settlement arrearage of $14,386.19 and ordered appellant to pay an additional $80 per month on the arrearage, for a total of $798.39 in monthly property settlement payments. The trial court ordered appellant to reimburse appellee $25,297.19 for the second mortgage at the rate of $500 per month plus ten percent interest per annum, beginning on June 1, 2000. Thus, appellant's monthly payments total $1,804.70 until June 1, 2000, and then $2,304.70 thereafter. The total amount that appellant was ordered to pay to purge his contempt over a six-month period between the decision date of December 21, 1999, and June 30, 2000, including his ongoing child support and property settlement payments, is $22,228.12 = [$10,899.92 + ($1,804.70 x 5) + $2,304.70]. This amount does not include the monthly premium payments for disability and life insurance that appellant was ordered to pay, but for which no evidence was presented.
Under Ohio law, a person charged with contempt for violation of a court order may defend by proving it was not in his power to obey the order.Pugh v. Pugh (1984), 15 Ohio St.3d 136, 140; Courtney v. Courtney
(1984), 16 Ohio App.3d 329, 334. The party asserting the defense bears the burden of proving inability to pay. Pugh, at 140.
Here, appellant testified that he had earned $21,025.33 thus far in 1999, working sixty to seventy hours per week in his construction business doing remodeling work. The trial court annualized this amount to find an income of $28,033. Appellant indicated that he had no assets remaining, that he could not borrow money due to his bankruptcy, and that he had to borrow the $20,000 to pay off his spousal support obligation.
Despite having testified in July 1998, that he could find a job earning $50,000 per year, appellant stated that he no longer believed that he could find a job earning this amount because he is not qualified. However, the trial court found that appellant's testimony regarding his income was not credible. The determination of credibility of witnesses is a question for the trial court and is entitled to deference on appeal.Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418-419.
The trial court found appellant to be voluntarily underemployed and imputed an income of $50,000 per year to him. The trial court based this imputed income figure on appellant's testimony in July 1998, that he could find a job earning that amount. Appellant voluntarily quit a job earning $50,000 per year because he did not agree with the business practices of his employer, and he claimed he could not find a comparable job because he lacked experience, even though he had owned a construction company for over sixteen years. Appellant's testimony illustrated that he transferred RMB Investments to his mother and, shortly after the divorce, folded McEnery Construction Company after sixteen years of business. Appellant testified that he earned income from his current wife's aerial photography company, but he could not point out where he claimed these earnings on his income tax return. Appellant conceded at the July 1998 contempt hearing that he had lied on two credit applications by stating that he made approximately $100,000 per year. He also indicated at the July 1998 hearing that he had borrowed $30,000 in personal loans from "other individuals," and he borrowed an additional $20,000 in 1999, to pay off his spousal support obligation.
This court has held that voluntary termination of employment and subsequent inability to pay child support orders are not valid defenses to contempt. Jones v. Mosley (Dec. 14, 1995), Franklin App. No. 95APF04-442, unreported. Here, it is clear that appellant voluntarily terminated his employment earning him $50,000 per year because he testified that he did not agree with his employer's business practices. More-over, rather than seeking comparable employment within the construction industry, appellant has chosen to embark on starting other businesses, such as an aerial photography company and then another construction company. Given that the trial court found that appellant's testimony was not credible, we find that appellant did not meet his burden of proving inability to pay. The record supports the amounts of the arrearages, and the trial court spread the payments over a six-month period. While this court might have fashioned a different purge order, we do not find an abuse of discretion.
Consequently, appellant's third and fourth assignments of error are overruled.
The fifth assignment of error asserts the trial court erred in calculating child support by failing to consider the fact that appellant pays the children's private school tuition. We disagree.
The decision to modify child support is reviewed on an abuse of discretion standards. Woloch v. Foster (1994), 98 Ohio App.3d 806, 810. Appellant agreed in the divorce decree that he would be responsible for the children's pre-school and school tuition up to grade twelve, whether it is in public or Catholic schools. As appellee asserts, the record indicates that appellant did not request a deviation in his child support obligation to reflect the amount of tuition he pays for the children or file a motion to modify his obligation to pay tuition. Thus, appellant has raised this issue for the first time on appeal. The general rule is that an appellate court will not consider an issue raised for the first time on appeal when the issue could have been raised before the trial court. State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78,81. This rule is especially compelling when the issue concerns a discretionary determination, such as a child support obligation.
Consequently, appellant's fifth assignment of error is overruled.
Appellant's sixth assignment of error asserts there is no evidence in the record that supports the trial court's finding that appellant owes appellee $125,000 in property settlement. We disagree.
Although appellant argues that there is no evidence in the record indicating this figure and that his counsel is unable to determine the basis of the sum, the amount of the cash property settlement comes directly from the divorce decree. Appellant voluntarily agreed to this amount in the divorce decree. If appellant was dissatisfied with the property division, he had the opportunity to appeal the divorce decree, but that time has now passed. Therefore, appellant's sixth assignment of error is overruled.
Based on the foregoing, appellant's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.
PETREE and LAZARUS, JJ., concur.