[Cite as *Eldridge v. Eldridge*, 2019-Ohio-233.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

KIMELA S. ELDRIDGE, nka
ROBERTSON

      Plaintiff-Appellee

v.

PHILLIP D. ELDRIDGE

      Defendant-Appellant

:
:
:
:
:
:
:
:
:
:
:

Appellate Case No. 2018-CA-17

Trial Court Case No. 2005-DR-218

(Domestic Relations Appeal)

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of January, 2019.

. . . . . . . . . .

F. ANN CROSSMAN, Atty. Reg. No. 0043525, 2625 Commons Boulevard, Beavercreek, Ohio 45431
      Attorney for Plaintiff-Appellee

KEITH R. KEARNEY, Atty. Reg. No. 0003191, 40 North Main Street, Suite 2160, Dayton, Ohio 45423
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Phillip Eldridge appeals from an order of the trial court finding him in contempt for failing to pay certain medical expenses for his minor child and requiring him to pay the attorney's fees and costs associated with the contempt litigation.

{¶ 2} We find that the trial court did not abuse its discretion by finding Eldridge in contempt regarding the medical expenses.   We do, however, conclude that the trial court abused its discretion in its determination of the amount of attorney's fees and litigation costs.   Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for the trial court to enter a modified award of attorney's fees and costs.

## I.        Facts and Procedural History

{¶ 3} Phillip Eldridge and Kimela Eldridge (nka Robertson) were married in 1986. They were divorced in 2006.   The parties have four children, two of whom were minors at the time of the divorce (a daughter and a son).   Eldridge was designated as the residential parent and the legal custodian of the parties' daughter, who has since become emancipated.   Robertson was designated the residential parent and legal custodian of the parties' adopted son.   The son has special needs.   As noted by the trial court:

The minor child has been diagnosed with dyscalculia and dysgraphia.   The diagnosis consists of a set of neurological symptoms resulting in learning disabilities and behavioral problems.   The condition is recognized by the Americas [sic] With Disabilities Act.   The Act defines a learning disability as a condition that limits a major life activity, for instance learning.   The

diagnosis consists of a set of neurological symptoms resulting in learning disabilities and behavioral problems. The child has also been diagnosed with reactive attachment disorder, attention deficit-hyperactivity disorder, learning disorders, major depressive disorders, generalized anxiety disorder, and oppositional defiant disorder.

Dkt. No. 254, p. 4 (footnote omitted.)

{¶ 4} The final judgment and decree of divorce provided for a downward deviation in the amount of child support owed by Eldridge to Robertson for the care of the son, as Robertson was receiving a State of Ohio adoption subsidy for the child. The decree also required Eldridge to provide group health insurance for the child and to pay for all uninsured medical, dental, optical, psychological and orthodontia expenses incurred for the child. Eldridge was also ordered to pay Robertson the sum of $3,500 per month as spousal support.

{¶ 5} Robertson subsequently moved, with the minor son, to Texas, and she remarried. On March 1, 2007, the parties entered into an agreed judgment to modify child support and to terminate spousal support. Again, the parties agreed to a downward deviation of child support because Robertson continued to receive the adoption subsidy.

{¶ 6} On July 8, 2008, Robertson filed a motion seeking to hold Eldridge in contempt for failing to provide medical insurance for the minor son and for failing to pay accrued uninsured medical expenses. In November of that year, Robertson also filed a motion to increase child support. An entry and order filed March 10, 2009, dismissed both motions without prejudice. On March 23, 2009, Robertson re-filed her motion for contempt alleging the same issues raised in the prior motion. In October 2009, she filed

a motion to dismiss the motion for contempt. That same day, an entry was filed by the court dismissing the contempt motion without prejudice.

{¶ 7} In December 2009, Robertson filed another motion to increase child support as well as a motion to hold Eldridge in contempt for failing to pay the child's uninsured medical expenses and for failing to provide health insurance coverage for the child. A hearing was conducted before a magistrate in June 2010. The magistrate issued decisions in January 2011 increasing child support to $1,512.90 per month, with this amount representing an upward child support deviation. The decisions noted that Robertson, through her husband, was currently providing health insurance coverage for the child. It further noted that Eldridge had the means to provide health insurance for the child, and that he should do so in order to give Robertson "a wider variety of options" for the child's healthcare. However, the magistrate's decision only ordered Robertson to carry health insurance. The decisions further ordered Robertson to pay the first $100 of uninsured medical expenses. The order required Robertson to pay 6.64 percent of the remaining uninsured medical expenses and required Eldridge to be responsible for the remaining 93.36 percent of the expenses. The magistrate impliedly overruled the request to hold Eldridge in contempt as it made no findings regarding contempt. Eldridge filed objections.

{¶ 8} In December 2011, following a hearing, the trial court issued an order overruling Eldridge's objections. In its order, the trial court found that Eldridge's average income over the last four years had increased to $351,250 per year. The trial court found that the increase in income, along with the child's special needs, merited an upward deviation of child support. The trial court further noted that the child was receiving proper

intervention at his private school, Hightop Ranch. The court thus increased Eldridge's child support obligation above the amount required by the child support worksheet in order to cover the cost of the child's school tuition. The trial court left intact the provision that Robertson provide health insurance coverage for the child. Neither party appealed.

{¶ 9} On June 7, 2012, Eldridge filed a motion to modify child support. Following a hearing, the parties entered into an agreed order reducing Eldridge's child support obligation. The parties agreed that this amount, though less, still included an upward deviation from the child support worksheet and that such a deviation was proper given the disparity in parental income and the amount of private school tuition being paid by Robertson.

{¶ 10} On July 9, 2013, Eldridge filed another motion to reduce his child support obligation. On July 31, 2014, Ann Crossman entered her appearance as new counsel for Robertson. In September 2014, Robertson filed a motion for contempt alleging that Eldridge had failed to: (1) provide medical insurance coverage for the child; (2) pay uninsured medical expenses; (3) maintain a life insurance policy for the benefit of the child; and (4) return a specific piece of art to Robertson. Robertson also filed a motion seeking attorney fees and costs. On July 28, 2015, the parties entered into an agreed order providing that Eldridge would ship the art to Robertson and that he would provide proof that he had maintained a policy of life insurance for the benefit of the child. The parties also agreed to dismiss their respective motions without prejudice.

{¶ 11} On January 5, 2016, Robertson filed a motion for contempt regarding Eldridge's failure to provide health insurance coverage, pay for uninsured medical expenses, and provide proof of life insurance coverage. She also filed a motion seeking

attorney fees and costs. On October 4, 2016, she filed a Civ.R. 41(A) dismissal of the motion. The next day she refiled the motion for contempt. In June 2017, she also filed a motion for contempt due to Eldridge's failure to pay for the child's college tuition as provided for in the final decree.

{¶ 12} A hearing was conducted on March 17, 2017 and continued on June 1, 2017. Robertson sought over $150,000 in reimbursements from Eldridge. Of this amount, $10,286.90 represented monies paid by Robertson and her husband for health insurance coverage for the child. Also included in the requested medical expenses was a charge of $8,690 payable to Dallas Brain Changers (DBC). Robertson further claimed the sum of $80,214.50, which she argued represented monies paid for inpatient treatment at Hightop Ranch, a private school that the child attended for a period of time. During the hearing, Robertson decreased her request by $46,670, conceding that this amount was for tuition for private school costs (Dallas Academy and Resolution Ranch), which had been disposed of via the child support orders providing for upward deviations.

{¶ 13} Robertson also requested attorney's fees in the amount of $47,688.44, paralegal fees of $4,763.06, and litigation costs in the amount of $9,509. She presented the testimony of Paul Roderer, Jr. as her expert on her claim for attorney's fees.

{¶ 14} The trial court found Eldridge in contempt for failing to pay for health insurance for the child. Eldridge was ordered to serve 30 days in jail. The order contained a purge provision permitting Eldridge to avoid jail by paying $10,286.90 to Robertson within 120 days.

{¶ 15} The trial court determined that the $80,214.50 Hightop Ranch expenditure represented tuition expenses for which the prior child support orders had provided.

Thus, this claimed expense was denied, and this determination was not appealed.

{¶ 16} The trial court found Eldridge in contempt for failing to pay the remaining sum of $16,286.17 which the trial court determined he owed as reimbursement for uninsured medical expenses, including the DBC charges. The court ordered Eldridge to spend 30 days in jail, but permitted him to purge the contempt by paying the expenses within 120 days.

{¶ 17} The trial court did not award Robertson all of her requested fees. Instead, the trial court awarded attorney's fees of $31,000 and paralegal fees of $2,400. The trial court did award her the entirety of her requested litigation costs of $9,509.89.

{¶ 18} Eldridge appeals.

## II. Contempt Determination

{¶ 19} Eldridge's first assignment of error states as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN CLASSIFYING THE

DALLAS BRAIN CHANGERS EXPENSES AS UNPAID MEDICAL

EXPENSES AND ERRED IN FINDING APPELLANT IN CONTEMPT FOR

HIS FAILURE TO PAY SAME.

{¶ 20} Eldridge contends that the trial court erred by including the expenses for treatment by DBC as an unpaid medical expense for which he was responsible. In support, he notes that Robertson testified that the DBC treatment was utilized in connection with the child's enrollment at Dallas Academy private school.

{¶ 21} "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the

terms of that order." *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4. Clear and convincing evidence is the standard of proof in civil contempt proceedings. *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP-1176, 2011-Ohio-5972, ¶ 13. We review the trial court's decision whether to find a party in contempt under an abuse-of-discretion standard. *DeWitt v. DeWitt*, 2d Dist. Darke No. 1386, 1996 WL 125920, *2 (Mar. 22, 1996), citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). (Other citations omitted.) " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 22} There was evidence that the parties' son had been enrolled in private schools due to his learning disabilities. In 2013, he was enrolled in school at Dallas Academy, a private non-profit school specializing in children with learning disabilities. According to the record, the child initially did not fare well in that school, and he was placed on probation. In 2014, Robertson took the child to DBC for evaluation and treatment. As part of that treatment, the child underwent testing which indicated the child had a frontal lobe dysfunction. The child underwent treatment at DBC for a period of 18 months. According to Steven Stockdale, a clinical psychologist who testified at the hearing, the treatment resulted in positive results. The record indicates that the child's

performance and behavior in school improved following treatment, and he ultimately was able to graduate from Dallas Academy in 2017. At the time of the hearing, the child was enrolled in college.

**{¶ 23}** Robertson did testify that the DBC treatment was used in conjunction with his schooling at Dallas Academy. However, the record supports a finding that the DBC treatment was sought because the child was not doing well at Dallas Academy and Robertson wanted to seek treatment that would enable him to remain at Dallas Academy. Thus, we disagree with Eldridge's argument that the DBC charges represent an expense solely related to the child's enrollment in private school that should have been excluded from medical repayment requirements. As conceded by Eldridge, DBC is a neurotherapy center which provided the child with neurotherapy and psychotherapy. The record demonstrates that DBC and Dallas Academy are two separate, unconnected entities. There was no evidence that Dallas Academy required the child to seek treatment at DBC.

**{¶ 24}** Other than claiming that he did not pay the DBC expense because he considered it to be a tuition payment covered by the child support orders, Eldridge presented no reason for the non-payment. Based upon this record, we conclude that the trial court was free to discredit Eldridge's claimed defense. As stated, we find nothing to connect the treatment at DBC with Dallas Academy other than Robertson's desire to seek further treatment in order to prevent the child from doing poorly in school. Dallas Academy did not provide the treatment, and there was no evidence that it required the treatment. The treatment, instead, involved neurotherapy and psychotherapy, both of which, according to the evidence, constituted medical treatment.

{¶ 25} Based upon the record, we conclude that there was evidence sufficient to support the trial court's determination that the DBC expenses were medical expenses that were not paid by Eldridge. Thus, the trial court did not abuse its discretion in concluding that Eldridge was in contempt for failing to reimburse Robertson for that expense.

{¶ 26} We are aware that the magistrate's decision filed on January 14, 2011 required Eldridge to pay only 93.36% of the uninsured medical expenses. We are further aware that the order on appeal did not adhere to the apportionment set forth in the 2011 decision, as Eldridge was required to pay the entirety of the DBC unpaid expenses in the sum of $8,690. However, we cannot say that the trial court abused its discretion in this regard. The DBC expenses were incurred in 2014 and 2015. Eldridge did not reimburse Robertson until ordered to do so in the 2018 contempt finding. We presume that the trial court was aware of the terms of the 2011 magistrate's decision and that it determined such an apportionment inequitable given the delay in the payment.

{¶ 27} The first assignment of error is overruled.


### III.    Attorney's Fees and Costs

{¶ 28} The second assignment of error asserted by Eldridge states:

THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING APPELLEE ATTORNEY FEES, PARALEGAL FEES, AND OTHER LITIGATION COSTS, THE AMOUNT OF WHICH IS ARBITRARY AND UNSUPPORTED BY THE EVIDENCE PRESENTED.

{¶ 29} Eldridge argues it was not equitable to award attorney's fees, and he argues

that the amount awarded was not reasonable.

{¶ 30} "A trial court has discretion to include reasonable attorney fees as a part of costs taxable to a defendant found guilty of civil contempt." *State ex rel. Fraternal Order of Police Captain John C. Post Lodge No. 44 v. Dayton*, 49 Ohio St.2d 219, 361 N.E.2d 428 (1977), syllabus; *Passage v. Passage*, 2d Dist. Greene No. 2015-CA-36, 2016-Ohio-1097, ¶ 31. In addition, R.C. 3105.73(B) states that "[i]n any post-decree motion or proceeding that arises out of an action for divorce * * *, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable."

{¶ 31} It is well established that, in order for a party to prevail on a claim for attorney's fees, the moving party must demonstrate that the fees were reasonable and necessary. *Donese v. Donese*, 2d Dist. Greene No. 2000-CA-17, 2000 WL 1433872, *4 (Sept. 29, 2000), citing *Thomas v. Thomas*, 2d Dist. Greene No. 94-CA-18, 1995 WL 137015, *9 (Mar. 31, 1995).

{¶ 32} Trial court decisions to award attorney's fees and litigation expenses are reviewed under an abuse of discretion standard. *Janis v. Janis*, 2d Dist. Montgomery No. 23898, 2011-Ohio-3731, ¶ 78. "We may not substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, we conclude that the trial court abused its discretion." *Id.*, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989).

{¶ 33} As noted, Robertson presented the testimony of attorney Paul Roderer, Jr. as her expert regarding the reasonableness and necessity of her attorney's fees and litigation costs. Roderer testified that the hourly rate Robertson's attorney charged for

attorney's fees and for paralegal fees was reasonable and comparable to the hourly rates charged by other attorneys in the area. He further testified, after reviewing the invoices presented to Robertson by Crossman along with Crossman's file, that the time expended was necessary given the complexity of the case. On cross-examination, Roderer admitted that, to the extent any of the expenses had been disposed of by prior decisions or determined not to be medical expenses, awarding attorney's fees for those matters would be inappropriate.

{¶ 34} As noted, Robertson sought over $150,000 in unpaid expenses. However, she conceded that almost $47,000 of that amount, for Resolution Ranch and Dallas Academy, was not recoverable as it represented amounts covered by the prior child support orders. Further, the record clearly demonstrated that the $80,214 for which Robertson sought reimbursement was solely for tuition payments to Hightop Ranch. Thus, any fees associated with litigation over these expenses must be excluded from any award of fees.

{¶ 35} It appears that the trial court, given the reduction in the attorney's and paralegal fees it awarded, may have taken into consideration the fact that the Hightop Ranch expenses related solely to tuition and that the Resolution Ranch and Dallas Academy expenses had been resolved in prior litigation. However, the trial court did not set forth its reasoning regarding the amount of the fees it excluded from Robertson's request, and, as a result, we are not able to determine how the trial court reached its fee award.

{¶ 36} More troubling is the fact that the record does not contain all of Crossman's fee invoices. Instead, Crossman only submitted two exhibits, identified as Exhibit

Numbers 13 and 37, which purported to be her fees invoices. Upon concluding that these two exhibits did not match the amount of fees and costs requested or awarded, we issued an order requiring the parties to inform this court whether documents had been inadvertently omitted from the two exhibits. Crossman filed a response claiming that two other exhibits, Exhibits 26 and 29, containing invoices for fees were presented to the trial court and counsel at the hearing. However, she acknowledged that only exhibits 13 and 37 were admitted as the remaining two were "not specifically identified and introduced into evidence." Crossman suggests that because Roderer testified regarding the total amount of fees she requested, as set forth in all four invoice exhibits, there was sufficient evidence in the record regarding her fees. Crossman also suggests that this court should correct the record by ordering that "a supplemental record be certified, filed, and transmitted pursuant to App.R. 9(E) to include the [two exhibits that were not admitted]."

{¶ 37} App.R. 9(A) governs what may be included in the record on appeal, and provides, in pertinent part:

The original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases.

{¶ 38} App.R. 9(E) establishes the appropriate procedure to correct or modify the record after its submission to this court and provides as follows:

If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything

material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to form and content of the record shall be presented to the court of appeals.

{¶ 39} Robertson desires to supplement, and thus correct, the record in this case with Exhibits 26 and 29, by invoking App.R. 9(E) to accomplish the requested "correction." As noted, where the record of the proceedings in the trial court, either by error or by accident, is incomplete or incorrect, App.R. 9(E) provides a mechanism whereby the record may be corrected or modified by stipulation of the parties, by the trial court, or by the court of appeals. Here, however, Exhibits 26 and 29 were never introduced in the trial court or otherwise made a part of the trial court record. Nor is there anything in the trial court's decision to indicate that the trial court actually had or examined these exhibits. An appellate court "cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new [information]." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. Simply put, the record before us is complete because it contains all the exhibits introduced and admitted, and thus App.R. 9(E) is not applicable.

{¶ 40} Further, regardless of the fact that Roderer testified that the entire amount of fees sought by Robertson, $61,961.39, was reasonable and necessary, the record does not support this amount. A review of the transcript reveals that Roderer testified

he only reviewed Exhibits 13 and 37. Additionally, Roderer admitted that, to the extent any of the requested fees were related to prior litigation or non-medical expenses, an award thereof would not be appropriate. He also indicated that he could not delineate which fees were related to issues not involved in prior litigation or non-medical expenses.

{¶ 41} We conclude that there was a failure of proof on the issue of attorney's fees because Robertson failed to introduce two of the invoice exhibits and Roderer did not testify about these exhibits. Further, we cannot determine from the record or the trial court's decision how the trial court arrived at the sum awarded to Robertson. Thus, we cannot say that the trial court's order was supported by the evidence. Given this, we must conclude that the trial court's fee and cost award was reasonable, even though it did not award the entire amount sought by Robertson, and thus, was an abuse of discretion. Exhibits 13 and 37 support an award of only $27,756.87 in fees and costs.

{¶ 42} The second assignment of error is sustained.

## IV.     Conclusion

{¶ 43} The first assignment of error being overruled and the second assignment of error being sustained, the judgment of the trial court is affirmed in part, and reversed in part, and the issue of attorney's fees and costs is remanded to the trial court for the entry of an order requiring Eldridge to pay the sum of $27,756.87 in attorney's fees and costs to Robertson.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

F. Ann Crossman
Keith R. Kearney
Hon. Steven L. Hurley