[Cite as *Johnson v. Johnson*, 2020-Ohio-1644.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| JENNIFER L. JOHNSON | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-46 |
| | : | |
| v. | : | Trial Court Case No. 2016-DR-171 |
| | : | |
| DAVID L. JOHNSON | : | (Domestic Relations Appeal) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of April, 2020.

. . . . . . . . . . .

JAY A. ADAMS, Atty. Reg. No. 0072135, 100 North Detroit Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

DAVID L. JOHNSON, P.O. Box 364, Fairborn, Ohio 45324
    Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, David L. Johnson, appeals pro se from a judgment of the Domestic Relations Division of the Greene County Court of Common Pleas, which found him in direct contempt of court and in contempt of an Agreed Order that he and plaintiff-appellee, Jennifer L. Johnson, entered into following their divorce. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} David and Jennifer Johnson (hereafter "David" and "Jennifer") were married on October 20, 2001. Two children were born as a result of their marriage, a son in 2003, and a daughter in 2010. On July 19, 2016, Jennifer filed a complaint for divorce. Thhe trial court issued a final judgment and decree of divorce on August 2, 2018.

{¶ 3} Prior to issuing the final decree of divorce, the trial court ordered the parties to divide their personal property using a master list of property created by the trial court. Jennifer was to get the first choice of the property and the parties were to then alternate choosing items from the list until all the property was accounted for. At trial, the parties notified the trial court that they had successfully divided their property as ordered, with the exception of property located in two safes known as the "family safe" and the "business safe." In response to this issue, the trial court ordered the parties to meet and inventory the contents of the two safes before November 17, 2017. In the event the parties could not reach an agreement with regard to the property in the safes, the trial court ordered the parties to return to court to litigate the issue.

{¶ 4} Because neither party filed a motion related to the contents of the safes, when issuing the divorce decree, the trial court found that all personal property had been

properly divided and that both parties were satisfied with the division. However, four months after the divorce decree was issued, Jennifer filed a motion to compel David to provide her with certain items of personal property inside the business safe. Although David initially opposed Jennifer's motion, the parties were eventually able to reach an agreement with regard to the property inside the business safe. The trial court ordered the agreement to be memorialized in an Agreed Order, which the parties filed on March 8, 2019.

{¶ 5} The Agreed Order provided, in relevant part, that within 14 days of filing the order, David would return the following items to Jennifer:

1. Jennifer's wedding ring and her engagement stone in the form of a necklace or any other form;

2. Savings bonds in the name of their son;

3. Jennifer's birth certificate;

4. Both of their children's birth certificates;

5. Jennifer's parents' trust documents;

6. Jennifer's family genealogy book and documents;

7. Jennifer's senior picture book and senior pictures;

8. Jennifer's college and high school diplomas;

9. Two Leis family photo albums and copies of family photos in other albums;

10. A filing cabinet that was part of Jennifer's employment with United Health Care and the documents contained therein; and

11. Copies of family photos contained on hard drives in David's

possession.

{¶ 6} After filing the Agreed Order, on April 10, 2019, Jennifer filed a motion for David to show cause as to why he should not be held in contempt for failing to comply with the Agreed Order.   Specifically, Jennifer alleged that David had failed to return: (1) her wedding ring and engagement stone; (2) her parent's trust documents; (3) copies of their family photo albums; and (4) copies of family photos contained on the hard drives in David's possession.

{¶ 7} On July 2, 2019, the trial court held a hearing on the show cause motion for contempt.   At the hearing, Jennifer clarified that David had returned her wedding ring, but not her engagement stone.   Although not raised in her motion, Jennifer additionally testified that David had only provided her with one of their son's savings bonds.   Jennifer testified that she did not know the exact number of savings bonds that were in David's possession, but she testified that David had previously told her that he cashed $295 worth of the bonds.

{¶ 8} Jennifer also testified that David had not provided her with her parent's trust documents.   Although Jennifer testified that her parents paid $100 to obtain a copy of the trust documents from the attorney who drafted them, she indicated that the documents would need to be redrafted in the event the original documents were ever needed.

{¶ 9} Jennifer further testified that David only provided her with a small portion of the family photos and videos that were located on the compact discs and hard drives in David's possession.   Jennifer testified that David agreed to copy all the photos and videos onto a flash drive that she provided to him.   Jennifer testified that David had previously told her there were thousands of photos and a couple hundred hours of video

on the discs and hard drives. However, Jennifer testified that when she received the flash drive back from David, only a couple of videos and 600 photos, many of which were duplicates, had been copied.

{¶ 10} Based on David's failure to return her engagement stone, her parent's trust documents, their son's savings bonds, and copies of all their family photos and videos, Jennifer requested the trial court to find David in contempt of the Agreed Order. Jennifer also requested that the trial court award her the court costs and attorney's fees that she incurred as a result of David's contempt. Jennifer testified that she incurred $250 in court costs and at least $350 in attorney's fees.

{¶ 11} On cross-examination, David, who was proceeding pro se, did not question Jennifer, but instead made statements regarding the engagement stone. Specifically, David claimed that the engagement stone was only worth $150 and that he and Jennifer had agreed that he was going to take the stone to a jeweler so that it could be made into a necklace for their daughter. David then claimed that he was "a dumb guy or whatever" and "misplaced [the stone]." Contempt Hearing Trans. p. 43. Later, on rebuttal, Jennifer testified that the engagement stone was a half carat diamond that was worth at least $1,000.

{¶ 12} Following Jennifer's testimony, David called his father, William Johnson, to testify on his behalf. William testified that he acted as an intermediary between David and Jennifer and that he personally handed Jennifer her wedding ring and the flash drive containing the family photos and videos. William further testified that David had told him that Jennifer's engagement stone was with a jeweler for purposes of being turned into a necklace. William, however, admitted that David eventually told him that he had actually

misplaced the stone and was embarrassed about it.

{¶ 13} William also testified that, prior to the parties' Agreed Order, he and David had inventoried the contents of the safes. David offered their written inventory into evidence, but, following an objection from Jennifer's attorney, the trial court found the inventory was irrelevant and prohibited its admission into evidence. The trial court found that the inventory was irrelevant because it was created prior to the parties' Agreed Order and had no bearing on whether David had complied with the Agreed Order.

{¶ 14} Continuing, William testified that 12 days after the Agreed Order was filed, he and Jennifer went through the contents of the business safe together and put the contents into two piles—one for Jennifer and one for David. William then testified that Jennifer had contacted him the next evening and advised that her parent's trust documents were not in the pile of documents that she had brought home with her. David's father testified that he did not recall seeing the trust documents while he and Jennifer went through the safe.

{¶ 15} Throughout the hearing, David acted belligerently and made several inappropriate comments. After David's initial series of inappropriate comments, the trial court advised David that he was in direct contempt of court and sentenced him to 10 days in jail. The trial court also notified David that if he continued to behave in such a manner, he would earn an additional 10 days in jail per incident. Despite this admonishment, and after several more warnings from the trial court, David continued to interrupt the hearing with inappropriate comments. Over the course of the hearing, the trial court found David in direct contempt of court six times, for a total of 60 days in jail, which David began to serve immediately after the hearing.

{¶ 16} On July 10, 2019, the trial court issued two judgment entries—one journalizing the trial court's finding that David was in direct contempt of court six times during the contempt hearing, and the other finding David in contempt of the Agreed Order. With regard to the Agreed Order, the trial court found that David had violated four provisions of the order by failing to return the engagement stone, the trust documents, the savings bonds, and copies of the family photos and videos.   As a sanction, the trial court ordered David to serve 30 days in jail for each violation of the Agreed Order, for a total sentence of 120 days in jail.   The trial court, however, indicated that it would consider suspending the 120-day jail sentence if David did all the following before he was to be sentenced on January 8, 2020:

1. Return the engagement stone to Jennifer or pay the value of the engagement stone, which the trial court found to be $1,000;

2. Return the trust documents to Jennifer or pay the cost of having the trust documents redrafted in an amount not to exceed the cost of the original preparation;

3. Provide Jennifer with copies of all family photos and videos;

4. Pay Jennifer $295 dollars for the savings bonds;

5. Pay Jennifer $250 for court costs; and

6. Pay Jennifer $350 in attorney's fees.

{¶ 17} David thereafter appealed from the trial court's contempt judgments. Following the appeal, the trial court canceled the sentencing hearing scheduled for January 8, 2020.   In support of his appeal, David has raised eight assignments of error for review.   For purposes of clarity, we will address David's assignments of error out of

order.

## Second Assignment of Error

{¶ 18} Under his second assignment of error, David challenges the trial court's decision to sentence him to 120 days in jail for being in contempt of the Agreed Order. As previously discussed, the trial court found that David violated the Agreed Order by failing to provide Jennifer with: (1) her engagement stone; (2) her parent's trust documents; (3) their son's savings bonds; and (4) copies of all their family photos and videos. David contends that the trial court erred by sentencing him to a 30-day jail term for each of these violations. According to David, his failure to abide by the Agreed Order qualified as only one instance of contempt for which he could only be sentenced to a single, maximum term of 30 days in jail. We disagree.

{¶ 19} David bases his argument on R.C. 2705.05(A), which provides, in relevant part, that if a person accused of contempt is found guilty of the contempt charge after the required hearing, the trial court may impose any of the following penalties:

(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;

(2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;

(3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both.

{¶ 20} David's reliance on R.C 2705.05(A) is misplaced. Although R.C.

2705.05(A) does prescribe sanctions for indirect contempt violations such as the one at issue here, common pleas courts are not required to follow it. *Copley Twp. Bd. of Trustees v. W.J. Horvath Co.,* 193 Ohio App.3d 286, 2011-Ohio-1214, 951 N.E.2d 1054, ¶ 10 (9th Dist.). "[W]hile a common pleas court has a duty to follow the *procedure* for a contempt proceeding as outlined by R.C. 2705.05(A), e.g. the court must conduct a hearing, the common pleas court is not limited by the provisions of the statute which refer to the penalties which may be imposed. Those provisions, namely R.C. 2705.05(A)(1)-(3), are only binding on statutory courts." (Emphasis added.) *Carter v. Carter,* 2d Dist. Montgomery Nos. 14409, 14530, 14574, 1994 WL 660811, *14 (Nov. 23, 1994). This is because " ' "[t]he general assembly is without authority to abridge the power of a court created by the constitution to punish contempts * * *, such power being inherent and necessary to the exercise of judicial functions * * *." ' " *Id.*, quoting *State ex rel. Johnson v. Cty. Court of Perry Cty.*, 25 Ohio St.3d 53, 54, 495 N.E.2d 16 (1986), quoting *Hale v. State*, 55 Ohio St. 210, 45 N.E. 199 (1896), paragraph one of the syllabus. Therefore, "[a]lthough * * * the General Assembly may prescribe procedure in indirect contempt cases, the power to punish for contempt has traditionally been regarded as inherent in the courts and not subject to legislative control." *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 207, 299 N.E.2d 686 (1973). Thus, courts have "wide discretion to determine the punishment for contempt of [their] own orders." *State ex rel. Anderson v. Indus. Comm.*, 9 Ohio St.3d 170, 172, 459 N.E.2d 548 (1984).

{¶ 21} We note that there is some recent case law holding that " 'when two or more violations are brought in a single contempt action and during one hearing, the person found guilty of contempt cannot be punished for each violation.' " *Brown v. Brown*, 12th

Dist. Clermont No. CA2019-01-007, 2019-Ohio-3619, ¶ 19, quoting *Mackowiak v. Mackowiak*, 12th Dist. Fayette No. CA2010-04-009, 2011-Ohio-3013, ¶ 57, citing *Pugh v. Pugh*, 15 Ohio St.3d 136, 142-143, 472 N.E.2d 1085 (1984) and *O'Neill v. Bowers*, 10th Dist. Franklin No. 90AP-130, 1990 WL 189897 (Nov. 29, 1990). This concept originates from the Supreme Court of Ohio's holding in *Pugh*. In *Pugh*, the Supreme Court of Ohio relied on a former version of R.C. 2705.05 to find that a person "cannot be imprisoned for each violation which composes the contempt charge." *Pugh* at 143. Specifically, the Supreme Court of Ohio stated the following in *Pugh*:

> In the case *sub judice*, appellant was ordered to serve two consecutive ten-day jail terms for violating two different terms of the separation agreement. However, both violations were brought out in one action for contempt. R.C. 2705.05 states:

> "Upon the day fixed for the trial in a contempt proceeding the court shall investigate the charge, and hear any answer or testimony which the accused makes or offers.

> "The court shall then determine whether the accused is guilty of the contempt charge. If it is found that he is guilty, he may be fined not more than five hundred dollars or imprisoned not more than ten days, or both."

> Therefore, appellant may only be imprisoned for a maximum of ten days if he is found guilty of contempt. He cannot be imprisoned for each violation which composes the contempt charge. However, this ruling does not limit the number of contempt actions which may be brought. If appellant refuses to obey the orders of the court after serving his sentence,

additional contempt proceedings can be initiated which list the appellant's violations.

*Pugh,* 15 Ohio St.3d 136, 142-143, 472 N.E.2d 1085.

{¶ 22} In *Carter*, this court declined to follow *Pugh* and held that "[n]otwithstanding, the language of *Pugh*, we hold that the common pleas court's authority to punish contempt is not limited by R.C. 2705.05." *Carter*, 2d Dist. Montgomery Nos. 14409, 14530, 14574, 1994 WL 660811, at *14. We based this finding on the Supreme Court of Ohio's language in *State ex rel. Johnson*, a case which post-dated *Pugh*, and explained the following:

"A court created by the constitution has inherent power to define and punish contempts, such power being necessary to the exercise of judicial functions." *State, ex rel. Turner, v. Albin* (1928), 118 Ohio St. 527, 161 N.E.2d 792, paragraph one of the syllabus. "The general assembly is without authority to abridge the power of a court created by the constitution to punish contempts * * *, such power being inherent and necessary to the exercise of judicial functions * * *." *Hale v. State* (1896), 55 Ohio St. 210, 45 N.E. 199, paragraph one of the syllabus. Statutory powers to deal with contempts are merely cumulative and in addition to the inherent authority of the court. *Univis Lens Co. v. United Electrical Radio & Machine Workers of America* (1949), 86 Ohio App. 241, 245, 89 L.Ed.2d 658[.] * * *

*State ex rel. Johnson,* 25 Ohio St.3d 53, 54, 495 N.E.2d 16.

Because the holding in *Pugh* relied on R.C. 2705.05, which the Supreme Court of Ohio later indicated does not limit the trial court's inherent authority to punish contempts,

in *Carter*, we simply applied an abuse of discretion standard of review. In doing so, we found that under the totality of the circumstances, the trial court did not abuse its discretion in sentencing an appellant to three consecutive 30-day jail terms for violating three terms of a divorce decree. *Carter* at *14.

{¶ 23} Based on the foregoing, we find that our review of David's sentence for his contempt of the Agreed Order is confined to a determination of whether the trial court abused its discretion. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 24} Under the totality of the circumstances, we do not find that it was unreasonable for the trial court to sentence David to 30 days in jail for each of the four violations of the Agreed Order. The record indicates that David had ample time and resources to comply with the Agreed Order yet failed to do so in multiple respects and showed indifference to his failure. David also had a history of violating court orders. On April 14, 2017, the trial court previously found David in contempt of an order for him to make lease payments on a vehicle and sentenced him to 30 days in jail. *See* Decision and Order of Contempt (Apr. 14, 2017). Therefore, under the circumstances of this case, we do not find that it was an abuse of discretion for the trial court to impose an aggregate sentence of 120 days in jail for David's violation of four provisions of the Agreed

Order.

{¶ 25} David's second assignment of error is overruled.


**Third Assignment of Error**

{¶ 26} Under his third assignment of error, David challenges the trial court's decision finding him in direct contempt of court six times during the July 2, 2019 contempt hearing. David contends that the trial court should have suspended the hearing after it first found him in contempt and sentenced him to 10 days in jail. According to David, the trial court abused its discretion when it continued with the hearing and proceeded to find him in contempt five more times, increasing his sentence to 60 days in jail.

{¶ 27} It is well settled that " '[w]here a defendant, convicted of a criminal offense, has * * * completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction.' " *Harris v. Omosule*, 2d Dist. Greene No. 2009-CA-78, 2010-Ohio-1124, ¶ 6, quoting *Springfield v. Myers*, 43 Ohio App.3d 21, 25, 538 N.E.2d 1091 (1988), citing *State v. Wilson*, 41 Ohio St.2d 236, 325 N.E.2d 236 (1975), syllabus. "The burden of proof is on the defendant to establish at least an inference that he will suffer some collateral disability or loss of civil rights." *Harris* at ¶ 6, citing *State v. Berndt*, 29 Ohio St.3d 3, 504 N.E.2d 712 (1987).

{¶ 28} As a preliminary matter, we note that the nature of David's direct contempt sanction is criminal because David's 60-day jail sentence is unconditional, punitive, and not for the benefit of the complainant. *See Preston v. Shutway*, 2013-Ohio-185, 986 N.E.2d 584, ¶ 30-31 (2d Dist.). The record indicates that David began serving his 60-

day jail sentence immediately following the July 2, 2019 hearing, and David does not deny the fact that he has since completed that sentence. Therefore, insofar as David has served the 60-day jail sentence, his appeal of the trial court's direct contempt judgment is moot, as there is nothing in the record indicating that David will suffer any collateral disability or loss of civil rights from such judgment. *See Springfield* at 25 (appeal of contempt finding moot where appellant had completed his sentence for contempt and appellant failed to establish that he would suffer some collateral disability from such judgment).

{¶ 29} David's third assignment of error is overruled.

**First and Fourth Assignments of Error**

{¶ 30} Under his first and fourth assignments of error, David claims that Jennifer committed perjury during the July 2, 2019 hearing. David asserts that Jennifer perjured herself because she averred in a sworn affidavit attached to her motion to show cause that David had not returned her wedding ring as required by the Agreed Order, but later testified at the hearing that he had provided her with the wedding ring. Given that discrepancy, David claims the trial court should have permitted him to impeach Jennifer's testimony regarding the wedding ring and abused its discretion in prohibiting him from doing so. David also claims that the trial court abused its discretion in finding Jennifer's testimony credible given her perjury. Both of these arguments lack merit.

{¶ 31} Contrary to David's claim otherwise, the record of the July 2, 2019 hearing does not indicate that David ever attempted to impeach Jennifer using the inconsistent statement in her motion/affidavit. Rather, during Jennifer's direct examination, David

objected to Jennifer's testimony about receiving the wedding ring, which led to the following discussion:

David: I want to object for one second because in her sworn testimony [in her motion] she actually lied and said---

Court: What's the objection?

David: ---she hadn't had the ring back—

Court: Wait a minute.

David: ---the wedding ring back.    The $2,600 wedding ring back.

Court: That's not an objection.

David: Well, I'm just saying, like—

Court: You're—

David: ---she already lied.

Court: Wait a minute.

David: Sorry.

Court: You made an objection I'm overruling it because you're not making an objection.

David: All right.

Court: You're testifying.

David: All right.

Court: And you'll get a chance to do that—

David: All right. I'm sorry.

Court: ---later.

David: I apologize, your Honor.

Contempt Hearing Trans. p. 9-11.

{¶ 32} When it came time to cross-examine Jennifer, David did not bring up the contradictory statement in her motion/affidavit and thus never attempted to impeach her testimony regarding the wedding ring.   Accordingly, David's claim that the trial court did not allow him to impeach Jennifer is not supported by the record.

{¶ 33} With regard to Jennifer's credibility, the inconsistency between the statement in her motion/affidavit and her hearing testimony was certainly something the trial court could have considered when making a credibility determination.   As a general rule, an appellate court affords a trial court great discretion with regard to issues of witness credibility and will not substitute its own judgment for that of the trial court. *Weatherspoon v. Weatherspoon*, 2d Dist. Montgomery No. 23393, 2010-Ohio-3248, ¶ 74; *Seitz v. Seitz*, 2d Dist. Montgomery Nos. 22426, 23698, 2010-Ohio-3655, ¶ 19.   Upon reviewing the record, we find that it was not unreasonable for the trial court to find Jennifer more credible than David.   The record indicates that David lied to his father and Jennifer about taking Jennifer's engagement stone to a jeweler.   David's father also confirmed that David had previously made a false claim to the authorities that his daughter had been abducted.   In addition, David exhibited poor character during the show cause hearing by making several inappropriate comments and by disrespecting the court's authority. Therefore, based on the record, we cannot say that he trial court abused its discretion in finding Jennifer to be a more credible witness.

{¶ 34} David's first and fourth assignments of error are overruled.


**Fifth Assignment of Error**

{¶ 35} Under his fifth assignment of error, David contends that the trial court abused its discretion when it determined that the inventory of the safes prepared by his father was irrelevant and inadmissible at the July 2, 2019 hearing. We disagree.

{¶ 36} "The trial court enjoys broad discretion in the admission or exclusion of evidence and an appellate court will not disturb the exercise of that discretion without a showing of material prejudice." (Citation omitted.) *Phillabaum v. Monsanto Research Corp.*, 2d Dist. Montgomery No. 10290, 1987 WL 29457, *2 (Dec. 14, 1987).

{¶ 37} In this case, we find neither an abuse of discretion nor material prejudice with regard to the trial court's decision not to admit the inventory at issue. During the hearing, the trial court explained that the only issue before the court was whether David abided by the terms of the parties' Agreed Order, and that the inventory was irrelevant to that issue because it was made before the Agreed Order existed. Therefore, the trial court reasonably prohibited the admission of the inventory on grounds that it had no bearing on whether David complied with the parties' Agreed Order.

{¶ 38} David's fifth assignment of error is overruled.

**Sixth Assignment of Error**

{¶ 39} Under his sixth assignment of error, David challenges the trial court's order requiring him to pay the cost of redrafting Jennifer's parents trust documents in order to purge his contempt of the Agreed Order. David claims that the trial court should have instead ordered him to pay the cost of providing copies of the trust documents. We, however, find no abuse of discretion in the trial court's order. Jennifer testified that if the original trust documents were ever needed, she and her parents would have to have new

trust documents prepared. Therefore, it was reasonable for the trial court to order David to either provide the original trust documents or to pay the cost to have the trust documents redrafted.

**{¶ 40}** David's sixth assignment of error is overruled.

## Seventh and Eighth Assignments of Error

**{¶ 41}** Under his seventh and eighth assignments of error, David challenges the trial court's order requiring him to pay Jennifer $250 in court costs and $350 in attorney's fees to purge his contempt of the Agreed Order. We note that David does not dispute the fact that his contemptuous conduct was the reason these costs and fees were incurred. Rather, David claims that the clerk of court, not the trial court, should have determined the amount of court costs owed. David also claims that awarding court costs and attorney's fees was inappropriate because the parties' Agreed Order did not require him to pay such costs and fees. We disagree with David's claims.

**{¶ 42}** Pursuant to R.C. 3105.73(B):

> In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

{¶ 43} A trial court's award of attorney's fees and litigation expenses under R.C. 3105.73(B) is reviewed under an abuse of discretion standard. *Eldridge v. Eldridge*, 2d Dist. Greene No. 2018-CA-17, 2019-Ohio-233, ¶ 32, citing *Janis v. Janis*, 2d Dist. Montgomery No. 23898, 2011-Ohio-3731, ¶ 78. Therefore, " '[w]e may not substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, we conclude that the trial court abused its discretion.' " *Id.*, quoting *Janis*, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989).

{¶ 44} In this case, Jennifer testified that she had to pay $250 in court costs and at least $350 in attorney fees as a result of David failing to abide by the Agreed Order. David, on the other hand, did not provide any evidence or argument at the hearing challenging the reasonableness of the fees and costs that Jennifer allegedly incurred. Because the trial court found that David had violated the Agreed Order, and because the trial court was presented with an uncontested request for costs and attorney's fees and undisputed testimony as to the amount of those costs and fees, we find that the trial court did not abuse its discretion in awarding Jennifer $250 in court costs and $350 in attorney fees. Under the circumstances of this case, it was reasonable for the trial court to find that such an award of costs and fees was equitable.

{¶ 45} David's seventh and eighth assignments of error are overruled.

## Conclusion

{¶ 46} Having overruled all assignments of error raised by David, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Jay A. Adams
David L. Johnson
Hon. Steven L. Hurley